# CHARLESTON.

PAYNE *v.* STAUNTON.

Submitted November 16, 1903.—Decided March 1, 1904.

1. ELECTIONS—*Poll Books—County Clerk.*

Poll-books of a special election under a special act of the Legislature deposited in the office of the clerk of a county court are public papers or documents under sections 3 and 5 of chapter 117, Code, and the clerk is under duty to allow inspection of them under proper circumstances to a person interested in them, though such special act be unconstitutional. (p. 204).

2. COUNTY CLERK—*Public Records—Mandamus.*

Several persons who make common application to a clerk of a county court for inspection of public records, and are refused it, if entitled to such inspection, may unite in *mandamus* to compel such inspection. (p. 208).

3. COUNTY CLERK—*Records.*

A clerk of a county court has such interest as entitles him to refuse an inspection of records in his office when such inspection is not called for by law. (p. 209).

4. MINISTERIAL OFFICER—*Unconstitutional Act.*

Ministerial Officer. Can he refuse to perform an act required by an unconstitutional statute before it has been judicially declared invalid? (p. 210).

5. MANDAMUS—*Interested Persons.*

A pecuniary interest in an individual in the act sought to be compelled by *mandamus* must exist to maintain it. (p. 210).

6. MANDAMUS—*Common Interest.*

One or more individuals may maintain *mandamus* to compel the doing of an act, in which the public at large, including them, have a common interest. (p. 211).

7. PUBLIC RECORDS.

Inspection of records and papers in a county clerk's office is not a right vested in every person or under all circumstances. The person asking it must have **an** interest in the record or paper of which inspection is sought and the inspection must be for legitimate purpose. (p. 212).

8. MANDAMUS—*Public Records—Interested Persons.*

*Mandamus* will not lie to compel inspection of records by a

private individual for the sole purpose of learning evidence for the institution of criminal prosecution.  (p. 214).

Error to Circuit Court, Kanawha County.

Action by J. M. Payne and others against E. W. Staunton, county clerk.  Judgment for defendant.  Plaintiffs bring error.

*Affirmed.*

LINN, BYRNE & CATO, P. G. WALKER, and A. BURLEW, for plaintiffs in error.

MOLLOHAN, McCLINTIC & MATHEWS, for defendant in error.

BRANNON, JUDGE:

The Legislature of 1903 passed chapter 59 "to authorize the county court of Kanawha county to fund the indebtedness of said county by issuing its bonds, and to authorize a special election for that purpose."  Under that act an election was held upon the question whether bonds should be issued, and the returns of the election were made and canvassed, and the result ascertained, and the poll books and ballots were returned to the office of the clerk of the county court.  J. M. Payne and others applied to E. W. Staunton, clerk of the county court, to be allowed to inspect the poll books of said election for all the precincts of the county but he refused to do so.

Then they demanded that said clerk made them certified copies of certain ones of said poll books, offering to pay for them, but said clerk refused to make such copies.  Then said Payne and others applied to the circuit court of the county by petition for a *mandamus* to compel the clerk to allow them to inspect said poll books, and to make such copies as they should require.  An alternative *mandamus* was awarded, and upon its return Staunton demurred to it and moved to quash the alternative *mandamus,* and the court gave judgment sustaining the demurrer to the petition, and quashing the alternative *mandamus,* and from this judgment the plaintiffs sued out a writ of error.

One defense made by Staunton is, that the poll-books are not records or papers contemplated and provided for in section 5, chapter 117, Code, providing that "the records and papers of every court shall be open to the inspection of any person, and the

clerk shall, when required, furnish copies thereof." The reason given for such denial of the public character of these poll-books is, that the act of the Legislature under which the election was held violates Art. 6, section 39, of the constitution prohibiting special or local legislation in certain cases. Staunton claims that these poll-books are not more than waste paper in his office, and that no duty rests upon him to allow inspection or make copies of them, because of the unconstitutionality of the act. We will not pass upon the validity of the act, because we do not find it imperative upon us to do so. In deference to the Legislature, it is everywhere held by the courts that courts will not pass upon this question, unless a decision upon that very point is necessary to the determination of the case. *Edgell* v. *Conaway,* 24 W. Va. 747. Even if we say that the act is open to such objections, still we hold that these poll books are public papers on file in a public office subject to inspection, for the purpose of this case; they are such *pro hac vice.* It is of primary import that public records and papers shall be of ready access to the public, and we must be reluctant to declare that a custodian of them can restrict this right incorporated in the cited provision of the Code. We must be slow to announce that a clerk, whose duties as to their inspection and making copies of them, are purely ministerial, not discretionary, can assume the dangerous power to hold an act of the Legislature invalid and for that reason deny to citizens the right to inspect papers deposited in his office and custody only for preservation and public inspection and use because merely they originated under such a statute. We do not say that any and every paper happening to be in the clerk's office is official, or that any but legally public ones give the right to inspection; but that is not the case in this instance. These election papers have higher character. The election was held, the returns made, the result canvassed and declared and the poll-books put in the keeping of the clerk in the public office under color of law; they were actually in the office. Section 3, chapter 117, Code, says, "all papers returned to, or filed in the clerk's office shall be preserved therein until legally delivered out." This only requires that they be "returned to or filed in" the office. It does not draw the refined distinction that those filed under valid law are to be preserved, while those filed under an act turning out to be unconstitutional, though filed under color of law, are simply re-

fuse or waste in the office. Could they be thrown in the street, or altered or burned by the clerk with impunity? If citizens favorable to or against the bonds, believing a recount would sustain or defeat the proposition, should ask inspection prior to demand of recount, could they not lawfully do so?

A question of great practical importance comes up in this case. Can a clerk asked to do a ministerial act refuse on the ground that the statute under which he is asked to do that act is unconstitutional? Can he say that the Legislature has violated the constitution before the statute has been judicially declared void? Merrill on Mandamus, section 65 says: "But the courts will not consider the constitutionality of a law in a *mandamus* proceeding at the instance of a ministerial officer. If he should be allowed to question the law of the land, the operations of the government would be thwarted and great confusion would result. If the law is void, the parties can appeal to the courts for further protection. A *mandamus* will not be issued to compel the granting of a license under a law for a reason which, if valid, shows the law itself to be unconstitutional." Not much consistency or clear guidance is there in that section. Merrill cites *Smyth* v. *Fitcomb,* 31 Me. 272, holding that a ministerial officer, collecting and disbursing revenue, has no right to withhold performance of ministerial acts, prescribed by law, merely because possibly the law may be unconstitutional." He cites *People* v. *Soloman,* 54 Ill. 39. In it an assessor refused to assess certain taxes on the ground that the law was invalid. The law was held valid; but the court broadly states the law to be that a ministerial officer cannot be allowed to decide upon the validity. "It is the duty of a ministerial officer to obey an act of the Legislature directing his action, not to question or decide upon its validity," the court said. The fully considered case of *State ex rel.* v. *Auditor,* 47 La. Ann. 1679, holds, even against the State Auditor and Treasurer refusing to pay money under a statute allowing it, that "Executive officers of the State government have no authority to decline performance of purely ministerial duties imposed upon them by a law, on the ground that it contravenes the constitution. Laws are presumed to be and must be treated and acted upon by subordinate executive officers as constitutional and legal until their unconstitutionality has been judicially established." For the double purpose of showing that

these poll-books are, for the matter involved, public papers properly in the office, and also the holding that a ministerial officer cannot refuse to file them because in his opinion, the act under which an election is held is unconstitutional, I refer to *Franklin Co.* v. *State,* 20 Am. & Eng. Corp. Cases, 60, (24 Fla. 55). The syllabus says: "A statute which requires inspectors to canvass votes of an election and make return to the county commissioners imposes upon such commissioners the duty of receiving and keeping the returns in their official custody, as records. Neither the constitutionality of such statute nor the legality of the election held thereunder can be considered by the commissioners officially; nor can the same be raised by them as ground for not performing such duty in a *mandamus* brought to compel its performance." In *State* v. *Commissioners,* 18 Nebraska 506, a *mandamus* issued to compel commissioners to call an election, the court refusing to pass on the validity of the act, saying that the presumption is in favor of the validity of a statute, and that it is the duty of all ministerial officers to obey it until it is declared invalid. There the court by *mandamus* compelled an act going straight to the enforcement of the statute. The presumption that a statute is valid always operates, just how far is not clear. Some courts say that it operates until it is judicially declared to be void. The expression in point 2 in *State* v. *Buchanan,* 24 W. Va. 312, has this import. It is a very grave assumption of power for an officer exercising ministerial functions to say that the highest, the sole, law-making power has violated the constitution and he will therefore disobey its will. Great confusion and disorder might ensue from the exercise of such power. It should rarely be exercised—very prudently—only in plainest cases. I do not think that *mandamus* will go to compel an officer to do an act going directly to execute an invalid statute. I do not see that a court will take affirmative action to enforce it. But this is not a *mandamus* to enforce the statute. It is not to compel officers to hold, return, declare the result of, or issue bonds under, the statute. The demand upon the clerk did not call for an act on his part to enforce the statute in question; it was made under the Code, section given above, allowing inspection and copies, and the contested statute does not enter into the matter, except from the fact that the documents were created under it. And the poll-books did not go to the enforcement of

that statute, as they were to be used only as evidence to punish frauds in elections. So, the court was not asked to enforce the statute condemned as invalid. In support of the position that *mandamus* will not be awarded to compel the direct enforcement of a statute against the constitution it may be useful to give some cases. A *mandamus* was sought to compel a town clerk to assess a tax; but the court, holding that the statute commanding it was unconstitutional, it was refused. *State* v. *Tappan,* 29 Wis. 664. A statute required supervisors to divide counties into districts. *Mandamus* refused to compel them. *Van Horn* v. *State,* 46 Neb. 62. *Mandamus* refused to compel canvassing board to count ballots as directed by the statute. *Maynard* v. *Board,* 84 Mich. 288, (11 L. R. A. 332). *Mandamus* refused to compel controller to draw warrant to pay a demand allowed by a statute. *Patty* v. *Colgan,* 97 Cal. 251. *Mandamus* refused to pay bond. *Brandenstein* v. *Hoke,* 101 *Id.* 131. *Mandamus* refused to compel payment of judge's salary. *Madamount* v. *Dinie,* 6 N. Dak. 278. So to compel issue of town bonds to build a railroad. *People* v. *Bachellor,* 58 N. Y. App. 128. These are the cases where *mandamus* would operate directly to execute the unconstitutional law. For this reason I do not doubt the text of 19 Am. & Eng. Ency. L. (2nd ed.) 1090, that "it is the prevailing rule that ministerial officers charged by a certain act with a duty may urge the unconstitutionality of the act as a defense to *mandamus* to compel them to perform the duty." An officer surely can refuse to do an act not imposed upon him as a duty by law. "An unconstitutional act is not a law; it confers no right; it imposes no duty; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton* v. *Shelby County,* 118 U. S. 425. Though in 1813 in *Custis* v. *Lane,* 3 Munf. 579, the eminent Judge Roane said that it was a grave question whether action would lie against an officer acting in obedience to a legislative act found to be in conflict with the constitution, it is at this day fully settled that such an act is no law and affords no protection to a ministerial officer for an act doing harm to another. *Norton* v. *Shelby County,* 118 U. S. 425; Mechen on Pub. Offices, section 662; *Fisher* v. *McGirr,* 61 Am. D. 381; 23 Am. & Eng. Ency. L. 369, (2nd ed.) "When an act is adjudged to be unconsititutional, it is as if it never had been.

Rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made." Cooley, Con. Lim. 259, (7th ed.). It would seem to be logical and just that an officer has right to refuse to act under a void statute on the principle of self preservation. But in so doing he acts at his peril; for if he is mistaken, he is liable for non-feasance of duty. "If it is unconstitutional no one is obliged to obey. If constitutional it binds every one to obedience. Disobedience on such ground is always at the peril of the party disobeying whether a private individual or a public officer." *Clark* v. *Miller,* 54 N. Y. 528. As he cannot be compelled to act, cannot be sued or punished for not acting, it follows that he may refuse to do an act under a void statute. The case of the *State* v. *Butler,* 77 S. W. 560, is a well considered, elaborate case, based on this principle. An indictment was found against a person for attempt to bribe an officcer to vote in a certain way in discharging a duty under a city ordinance, and the Supreme Court of Missouri held the ordinance void, and that it imposed no legal duty, and therefore there could be no bribery to do the act. Under this doctrine I would hold that if the duty asked of Staunton went to execute the act, and if the act were void, he could not be compelled to perform it.

It is contended by Staunton that the plaintiffs cannot join in a *mandamus;* that each individual has a separate right, not joint, and cites 13 Ency. Pl. & Prac. 645, reading: "Those who have a common and joint interest" may join in *mandamus,* and should join. Without strain, it may be said that all citizens have a common interest in seeing that records in a clerk's office are preserved and that proper inspection be granted, as it is that the county be supplied with a court house. Is this not a matter of common public right, and may not citizens unite to vindicate it? But these plaintiffs united in a demand for inspection; the demand was joint; the refusal to all in common; the wrong done, one single wrong to all alike.

The plaintiffs say that Staunton could not refuse them inspection because he has no such pecuniary interest as will enable him to raise the question of the constitutionality of the act of the Legislature, and this upon the legal principle that courts do

not hear "an objection made to the constitutionality of an act by a party whose rights it does not effect, and who has therefore no interest in defeating it." Cooley Con. Lim 232; *Lampsell* v. *Bell,* 180 U. S. 276; 6 Am. & Eng. Ency. L. 1080. The plaintiffs say that all Staunton had to do was to keep the records and allow inspection, and make copies for pay. So JUDGE JOHNSON remarked of the assessor in *State* v. *Buchanan,* 24 W. Va. 375. But it does not strike me that an officer, as regards his individual interest, is compelled to spend time and labor to do a thing which the law does not impose upon him as a duty. He has an actual, we may say valuable or pecuniary interest in resisting. But then many cases, several cited above, allow an officer called on to exercise his office to resist *mandamus* by pleading the constitution against the statute. He is actually interested in the matter.

We now encounter a question raised by Staunton's demurrer to the petition and motion to quash the *mandamus nisi,* which question is, whether the plaintiffs present to the court such interest in the documents and purpose in their inspection as entitles them to inspection and *mandamus* to secure it. "The remedy by *mandamus* is restricted to cases where the relator is deprived of some pecuniary right." "A mere abstract right, unattended by any substantial benefit to the relator, will not be enforced by *mandamus.*" 19 Am. & Eng. Ency. L. (2nd ed.) 884, 758. "To maintain his *mandamus* in such a case (private right) the relator must show some personal or special interest in the matter." Merrill on Mandamus, section 228. As to the private individual right of the plaintiffs. The election was over. They do not say that its result was unsatisfactory, or that it had been falsely declared, or that they sought by recount or contest to change it, or that they had been denied their votes, or that the election had already prejudiced them, or that they were harmed. They do not point out how they as individuals had any pecuniary interest, or sought by the documents to vindicate such interest. They do not say that they had suffered or would suffer a penny's loss because of the election, or that they had been, or would be detrimented thereby. Therefore, as individuals, they show no actual interest or loss or damaged right to be vindicated by the inspection of the writ. They say they are citizens, voters and taxpayers of the county; but it is not seen

that the fact gives them any individual right over persons not such asking inspection of records. Could they sustain an action against Staunton for damages? They could not.

Can the plaintiffs sustain their case upon the theory that they represent and seek to vindicate the public right? They do not sue for themselves and others, but only as themselves citizens, taxpayers and voters. Where a clear public right common to the community at large is wronged and calls for vindication, some cases hold that it must be done by the public officer, others that citizens may do so. 13 Ency. Pl. & Prac. 630. Merrill on Mandamus, section 230 says: "The great weight of American authority is to the effect that where relief is sought in a public matter or a matter of public right, the people at large are the real party, and any citizen is entitled to a writ of *mandamus* to enforce the performance of a public duty." This is likely the true rule, as otherwise often the public interest would deeply suffer. On this theory this Court has entertained *mandamus* to compel building of a bridge, a court-house, and to declare the result of an election upon change of county seat. *Doolittle* v. *County Court*, 28 W. Va. 158; *Brown* v. *Randolph County*, 45 *Id.* 727; *State* v. *County Court*, 47 *Id.* 672; *Morgan* v. *Wetzel County*, 53 *Id.* 372, (44 S. E. 182). Though not cases of *mandamus*, as showing that citizens have such interest as enables them to prosecute proper proceedings in public matters, I refer to *Osborne* v. *Staley*, 5 W. Va. 85; *Hamilton* v. *County Court*, 38 *Id.* 71, and citations; *Welch* v. *County Court*, 29 *Id.* 63; *Davis* v. *Brown*, 46 *Id.* 716.

Conceding the right of citizens, taxpayers and voters to judicial process to defend or promote the public weal or interest, still what is the public interest in this case that is to be defended, promoted, established? The election over; no recount asked; no objection made to its result; no future public interest to be advanced by interference with it. The petition says the proposition to issue bonds was defeated; and it is not proposed to contest that result. That is ended. The petition proposes to do nothing whatever to effect that election or any right dependent upon or arising from it. That petition sets forth only one purpose in view. It says that in certain precincts frauds and irregularities were committed by the officers of the election, in conducting it and declaring its result, that persons were recorded as

voting who did not vote, and that the officers "stuffed" and "padded" the ballot-boxes, as would be shown by the poll-books; and that inspection and copies of them were sought in order to know whether such officers had honestly and lawfully performed their duties, and for the purpose of instituting criminal prosecutions against them, if the disclosure of the facts should warrant it. It would be a fishing writ. Will *mandamus* go for this purpose? I repeat the rule that *mandamus* is restricted "to cases where the relator is deprived of some pecuniary right." Where is the pecuniary interest in the plaintiffs or the public? "*Mandamus* is applied to the protection of civil rights." Merrill on Mandamus, section 61. No criminal warrant is asked. In *People* v. *Masonic, &c.,* 98 Ill. 635, a *mandamus* was asked to compel officers of a Masonic Society to declare the adoption of an amendment to the constitution of the body. The case holds: "Pecuniary interest must be involved. *Mandamus* will not be awarded to a party until he shows that he has a clear legal right, which is denied, and that the denial of the right affects his pecuniary interest. It will not be granted to settle a mere fancy question." In *State* v. *St. Louis Paint Co.* 21 Mo. App. 526, it is held that every application for this writ must state two essential requisites; first, the legal duty imposed upon the defendant to do the thing asked; second, a pecuniary interest not to be compensated in damages. The individuals must have this interest; or the public must have a substantial, actual right in having the act done. What interest had the public in the inspection, or in having copies? I have seen no case holding that *mandamus* will issue merely and only to glean evidence for criminal prosecution. Equity will not entertain a bill of discovery to do so.

It becomes pertinent in this connection to see how far the right to inspect records goes. It is virtually claimed by the plaintiffs to be unlimited. True, the words of our statute are broad in saying that records shall "be open to the inspection of any persons," and so *State* v. *Long,* 37 W. Va. 266 says, using the words of the statute. As Clark had a plain right of inspection for business, it was not necessary to go far in interpretation of the law. Does the statute mean that inspection is for every one for pastime, whim, fancy? Is the right of inspection to be

granted under all circumstances? An Alabama statute said: "The records of the judge of probate's office must be free for examination of all persons." It was held that the right was "limited to any person having an interest," and that it did not confer the right on those engaged in negotiating loans on mortgage to make abstracts to all land in the county for future business use. *Randolph* v. *State,* 60 Am. D. 761. Two former casse there cited held that examination was "not the unqualified right of every citizen   *   *   *   and the individual who claims access to the records   *   *   *   can properly be required to show that he has an interest in the documents, and that the inspection is for a legitimate purpose. The qualification of the rule is that no person can demand the right save those who have an interest in the record." The right to make abstracts or copies for speculative purposes in compiling abstracts was denied in *Weber* v. *Worth,* 43 Mich. 534, (38 Am. R. 213). The right is not given "to all indiscriminately who may, for curiosity or otherwise, desire the same, but is limited to those who have some interest therein." In *Cormack* v. *Wolcott,* 37 Kan. 391, the statute reads: "All books required to be in their offices shall be open for the examination of any person." The court said that the common law gave inspection to only those having interest in the land or subject of the record. 4 Am. & Eng. Ency. L. 182, (2nd ed.) The court said the inspection must be under the eye of the clerk and under reasonable rules made by him. "The right claimed by the plaintiff for himself and every other person to inspect the records at will, and make copies, must of equal necessity be governed. If the right exists, it exists for all." The court said that under an unlimited right the office might be clogged, the use of the books engrossed for simply private ends, and they diverted from the public use designed. Right to make general abstracts of title for business was denied. The Colorado statute said the books "shall be open for the examination for all persons." The court refused *mandamus* to allow abstract makers to abstract the entire land titles of the county for sale. "It matters not that relators require no aid from him; for he is charged with the safe keeping and preservation of the records, and is responsible for their truthfulness and freedom from mutilation. A single stroke of the pen, the erasure or addition

of a single word, may change the character of a conveyance, or destroy the most valuable property right. The clerk is unfaithful to his trust if he allows one of the record books to remain for an instant in the hand of a stranger out of his sight." Even where a statute gave a stockholder of a corporation right to examine its records, in *mandamus* it was required to plead and prove some property right involved, that some controversy existed, or that some specific and valuable interest was in question, to settle which an inspection of the documents was necessary. *Ellsworth* v. *Borwart,* 58 Am. St. R. 427.

"Any person who has an existing interest in information to be obtained from public records in any county office has a right to make an examination to the extent of his interest," under an act saying that records "shall be open for the examination for any person." *Boylan* v. *Warren,* 7 Am. St. R. 551. See 60 Am. R. 764, full note; 24 Am. & Eng. Ency. L., (2nd. ed). 183. Under the law, common and statute, I think we may say, that when it comes to the test, under strict law, when *mandamus* is asked to compel inspection, the plaintiff must have some legal right to have inspection for legitimate use. Mechen on Public Officers so regards the authorities. In section 687 we read: "It is the duty of the clerk to permit persons having a present or prospective interest in the particular public records in his office to inspect and copy the same at reasonable times and under reasonable regulations. The performance of this duty may be enforced by *mandamus*." The case of *Barber* v. *West Jersey,* 53 N. J. Eq. 158, holds that "every person has right of access to the public records of the county clerk's office, without payment of fees, to examine any title in which he is interested, subject to reasonable rules and regulations." It held that an abstracting company had right of inspection to examine title to a "particular piece of property, but not to occupy the office to make a general abstract."

I think that the plaintiffs as citizens and taxpayers had right to inspection, it not appearing but that they desired a recount to change the result. I think people have right to inspect public papers, unless it appears that their object is an improper one, for whim or scandal, as the publication of indecent evidence in a divorce suit tending to degrade the parties and injure public morals, or any other improper or useless purpose. But when it

does so appear, then there is no right of inspection. How far a clerk may inquire into the purpose we need not say. I have said so much on this point because *State* v. *Long,* 37 W. Va. 266, is relied upon as giving unlimited right of inspection, and because that case does not enter far into the subject, and I have thought the decisions here given may be of public use. What interest have the plaintiffs on which to predicate the demand? What object which the public interest or law can realize to subserve? "The judicial records of the state should always be accessible to the people for all proper purposes, under reasonable restrictions as to the time and mode of examining the same, but no one has a right to examine or obtain copies from mere curiosity, or for the purpose of creating public scandal." *In re Caswell,* 49 Am. St. R. 814. I am not for a moment to be taken to intimate the slightest impeachment of the honest public motive of the worthy men who seek this *mandamus.* I do not doubt their motive; but I am stating legal principles as I see them.

And it is a fixed rule that if there be other remedy to accomplish the end sought, *mandamus* does not lie. The only end stated is to gather evidence for criminal prosecution. The grand jury is the medium of that end. It can send for persons and papers, and bring offenders to justice. Citizens cannot meddle in prosecutions save in the appointed modes, by becoming prosecutors or informants before grand juries or by recourse to criminal process. We do not think they can use *mandamus* for such purpose.

Judgement affirmed.

*Affirmed.*


DENT, JUDGE, *(dissenting):*

This is an application of citizens, taxpayers and voters of Kanawha County, who have been excluded from the right of inspecting the poll books of an election lately held therein, and refused copies thereof by the clerk of the county court, for a *mandamus* against such clerk to compel him to permit such inspection and make such copies.

The majority of the Court in determining the interests and rights of the applicants and the duties of the respondent to some extent have chosen to follow the ancient English common

law rule, emanating from a throne to its subjects, instead of the modern American Republican-Democratic doctrine, applicable to a government "of the people, by the people, and for the people." 24 Am. & En. En. Law (2nd ed.) 184, 183, n. 5; *State* v. *Long,* 37 W. Va. 266; *State* v. *King,* 154 Md. 621.

By the former imperialistic rule, the keeper of the rolls or records was a deputy of the King, from whom all power was derived, and in allegiance to whom all rights were held, who was only permitted to allow such royal subjects to inspect the records, who might have or show a special pecuniary interest therein, all others being excluded therefrom, except where public interests were involved. While the modern, popular doctrine is that the clerk, the custodian of the records, is the servant of the people, chosen by them as their trustee to have charge of such records in their behalf, and to hold them open for their inspection at reasonable times, under reasonable regulations, without let, interference or hindrance on the part of such clerk, or inquiry as to the purpose or object of such inspection. Every citizen, taxpayer and voter has the presumptive right of such inspection as adhering to his sovereignty, which the clerk cannot deny him un· less he can show that the object of the inspection is for illegiti ? mate, improper, or scandalous purposes. This is especially true in the strongest sense as to poll books or other election records in which all the people have a common interet, as a repository of the sovereign exercise of their right to select their servants and determine the extent of their powers, including taxation for public purposes. 24 Am. & En. En. Law, (2nd ed.) 170. The most open publicity is required by the public good as to such records, to prevent crime, detect crime and punish crime, against the purity of the ballot box, the sovereignty of the people and the rights of citizenship. Every qualified voter has a two-fold interest therein. First, an interest in common with the people for the preservation of the purity of the ballot box, the object of which is the continuity of the government and the preservation and perpetuation of its benefits; second, a personal interest in the right to vote, to have such vote recorded and counted, and to preserve it from being vitiated or destroyed by fraud. As incident thereto, he has the right to inspect the poll books to see that his vote has been recorded, and that it has not been invalidated by the insertion of fictitious names as a cover for fictitious bal-

lots. It is a more heinous wrong to deprive a voter of his vote by fraud, than it is by force. In the latter case he can have a speedy remedy by *mandamus,* under the election law or by an action for damages by suit. 10 Am. & En. En. Law, (2nd ed.) 673. While in the former case, he is remediless unless he is accorded the right of inspecting the poll books, and then he may be able to detect the fraud by which he has been cheated. For this reason, although he has no pecuniary interest involved, yet because the right to vote is so important to himself, and the public, as indirectly affecting his pecuniary interests that he not only should be accorded the right of inspection, but also the right to have copies of the poll books and to have the privilege of enforcing such rights by *mandamus.* 13 En. Plead. & Prac. 632; *Clay* v. *Ballard,* 87 Va. 787; *Wise* v. *Bigger, Clerk, &c.,* 79 Va. 269. Section 21, chapter 147, Code, provides that, "If a clerk of a court or other public officer, fraudulently make a false entry, or erase, alter, *secrete* or destroy any record in his keeping and belonging to his office, he shall be confined in jail not more than one year and fined not exceeding one thousand dollars. The concealment from public inspection, while not technically so, comes very near being an offense under this section, and should be made so by law. The word *secrete* used here, is undoubtedly broad enough to cover the wilful concealment of public records from persons having the right to inspect the same, although it would not cover the overt act of refusal where the clerk is acting from pure motives for justifiable ends.

The sixth clause of section 74, chapter 3, Code, provides that if any person "erase, deface, or change in any manner, any election record or any ballot, poll book, tally sheet or certificates of election, deposited with either of the clerks of the county or circuit courts, or conspire with another to do any of said acts, or induce or attempt to induce, any other person to do any of said acts, whether or not said acts or any of them, be committed or attempted to be committed, shall be deemed guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than two or more than five years."

A comparison of these two sections shows how much more important and necessary to the public weal the legislature regarded the records of an election, than it did the ordinary records kept in the clerk's office. In one case the offense is a misdemeanor

with forfeiture of office; the other is a felony car. ying with it not only the forfeiture of office, but the forfeiture of citizenship. The legislature in making this great difference between these two classes of records, undoubtedly acted in obedience to the will of the people. As the records are more sacred, so should the right of inspection by the people and the voters, be held the more sacred. Under section 68, chapter 3, Code, the clerk of the county court is made the custodian of the poll books. They thereby become public records, subject to the same right of inspection to those interested, as other public records in his office. The clerk himself thereby became a part of the election machinery of the State, subject to the same penalties and the same remedies as all other election officers. Section 89, chapter 3, Code, provides that "Any officer or person upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of *mandamus.*" By this chapter the duty devolved upon the clerk to preserve the poll books for the benefit of the public, which necessarily includes the right of inspection. They are still election records in which the public interest continues unabated and undiminished, although in the hands of the clerk, and are subject to protection and inspection under the penalties and remedies of the election law. By this same section it is provided that this Court may comped any officer mentioned therein, to do and perform legally any duty required of him, *by mandamus.*

So it seems to be perfectly clear that the applicants without regard to any direct, pecuniary interest, had the right to enforce the publicity of the poll books, both in the interest of themselves as voters, and in common with the public generally. It seems to be conceded in the opinion of the majority that the right of inspection exists and that *mandamus* lies, but as the applicants have stated the purpose for which they want inspection, and that is to ascertain whether the poll books have been feloniously tampered with, and the names of fictitious voters placed thereon, that the *mandamus* should be refused because such writ cannot be used in ascertaining evidence to aid in criminal prosecutions. No authority is cited for such proposition, but it is alleged in support thereof, that a bill of discovery will not lie to compel a defendant to incriminate or subject himself to criminal prosecution. There is no analogy between the two proceedings. 6

En. Plead. & Prac. 742. Section 5, article 3, of the Constitution provides that no person shall in any criminal case be compelled to be a witness against himself. There is no provision in the Constitution or in the law, statutory or common, that provides that a public officer may refuse the inspection of public records because he or some one else may be thereby subjected to prosecution or malfeasance in office, or for the felonious defacement of public records. Nor is there any law that permits the clerk to secrete or conceal public records from public inspection, because such inspection may lead to the prosecution of some person or officer for a public crime. Such laws would be contrary to public policy, injurious to public morals, and subversive of the public weal. The very object of publicity is to prevent the perpetration of crime, and the making of criminals. *Mandamus* lies in support of criminal prosecutions. 13 En. Plead. & Prac. 593. A bill in equity never does. Not only has the clerk no legal right to shield crime from the gaze of the public, but if the public records in his control show the commission of felonies, it is his duty to aid and assist in bringing the perpetrators to the bar of justice. This is a duty he owes to the public by reason of his agency and trusteeship in its service. If guilty himself, he is not bound to disclose it, but such guilt gives him no legal excuse to deny access to the public records. If a clerk deface, or knows that the record of a deed to property owned by another, has been mutilated and defaced, he cannot deny to the person injured the right to inspect such record, and then resist a *mandamus* because the party injured, says he wants to inspect the record for the purpose of instituting criminal proceedings to punish the guilty party. Nor can he interpose such objection to a *mandamus* for inspection of the election records, and the courts instead of entertaining such objection, should not deny any legal remedy to citizens and voters, who are honestly endeavoring to preserve the integrity of the election laws, because forsooth, it may eventuate in a criminal prosecution, nor does an appeal to a grand jury afford a remedy for the reason that they have no definite information on which to act. The information applicants want, and are bound to have, before they can call on the grand jury for investigation in their behalf, and which they are justly entitled to have, is withheld from them by the illegal and arbitrary action of the clerk. Such pretexts as

these, which stand in the way of the zealous voter, endeavoring to enforce the election law in the interest of pure elections, for his own and the public good, will hardly meet with the moral approval of the public conscience, or excite a responsive thrill in the great, honest, trustful heart of the people, full of truth and justice, and always made glad with pride inexpressible, by the immovable integrity and unsullied uprightness of their chosen servants. Nor can it be believed that Mr. Staunton, who has so long been before the public and enjoyed the esteem of his fellow citizens, will derive any satisfaction from pleas of this character interposed for his protection from a *mandamus* far less harmful in its nature. He has certainly not been guilty of any crime himself, that he is endeavoring to conceal from the people, nor does he want to place himself in the position of preventing investigation into crimes committed by others. I cannot help but think that the denial of the applicants rights, and his defense, in this case, is wholly actuated by misconception of his legal duties and probably wounded pride. Public office is a public trust to be exercised wholly in the public interest. The officer who forgets this and is controlled in the discharge of his public duties, by base and partisan ends, in disregard of patriotic love for the whole people, though he may temporarily triumph and reach success in all his undertakings, will live to realize the sober truth that "corruption wins not more than honesty," and to feel the full force of those most remorseful words of tongue or pen, uttered by the great, fallen politician, Cardinal Wolsey: "Oh, Cromwell, Cromwell, had I but served my God with half the zeal I served my King, He would not in mine age have left me naked to mine enemies!"

All that the applicants should be required to show is, that they are citizens, taxpayers and voters, and as such have an interest in the records of an election in which they participated, and have demanded and been refused the right to inspect the poll books of such election deposited with the clerk, and on such showing a *mandamus* should issue as a matter of course, unless the clerk shows that the purposes for which such inspection is desired, is unlawful, scandalous, or for some other reason improper. Neither the inspection of such poll books for publication, nor for the institution of a civil suit, or prosecution for

crime, is an unlawful, improper, or scandalous purpose, for they are all in the interest of and promte the public good.

The sentiment held and being fostered by politicians through a corruptible vote, that crime against the election laws is no crime, should be firmly met and vigorously repelled before it becomes a flood-tide, destructive of popular government. Courts of justice, at least, should give no countenance to such a false and dangerous sentiment. Sound public policy in the interest of public morals, for the promotion of the public good and the vindication of the sovereign rights of the people, enjoyed in common by citizens, taxpayers and voters, demands the reversal of the judgment and the award of a *mandamus*. Hence my dissent.

JUDGE McWHORTER concurs in this opinion.