STATE *Ex Rel.* THE CHARLESTON MAIL
ASSOCIATION, A CORPORATION, *Et Al.*

*v.*

JOHN H. KELLY, AS TREASURER
OF THE STATE OF WEST VIRGINIA

(No. 12469)

Submitted June 15, 1965.      Decided July 13, 1965.

*Jackson, Kelly, Holt & O'Farrell, F. Paul Chambers, James K. Brown,* for relators.

*C. Donald Robertson,* Attorney General, *Thomas B. Yost, Leo Catsonis,* Assistant Attorneys General, for respondent.

CAPLAN, JUDGE:

In this original proceeding in mandamus the petitioners, The Charleston Mail Association, a Corporation, Lyell B. Clay, as president of petitioner corporation and as a citizen, taxpayer and voter of Kanawha County and this state, and Robert Mellace, as political editor of the petitioner corporation and as a citizen, taxpayer and voter of Kanawha County and this state, seek to compel the respondent, John H. Kelly, as Treasurer of the State of West Virginia, to permit the petitioners and their duly authorized agents and employees to inspect certain records maintained by him in his office. It is the contention of the petitioners that the requested records are public records and are subject to scrutiny by the public in general and the petitioners in particular.

The respondent maintains that the petitioners have no clear legal right to examine or scrutinize the requested records and denies that such records are public records in the sense that they are open to examination by the petitioners as a matter of right. The respondent further contends that the records requested are not pertinent or relevant to the purposes for which the petitioners seek examination and that such requested information or examination

would lead only to confusion of the public and would not accurately reflect the actual status of the accounts sought to be examined.

The petitioners are engaged in the newspaper business and pursuant thereto seek to examine certain records in the office of the state treasurer as they pertain to balances of state monies on deposit in designated bank depositories. Specifically, the petitioners seek information which would reflect the balances of monies of the State of West Virginia on deposit in certain banks located in the City of Charleston, namely, The Charleston National Bank, The Kanawha Valley Bank, The City National Bank, Kanawha Banking and Trust Company and The National Bank of Commerce.

The avowed purpose of the petitioners in obtaining this information is to use it in the preparation and publication of a news story to the end that the citizens, taxpayers and voters of the state may be apprised of the current and past practices of the state government respecting the bank deposits of public monies.

Pursuant to this purpose, Robert Mellace, one of the petitioners, on May 4, 1965, requested the respondent, John H. Kelly, to permit him to inspect the records in the respondent's office which would show the balances of state monies on deposit in the banks mentioned above. In the alternative, Mellace requested the respondent to give him information from those records which would reflect such balances. The petitioners deemed this information to be pertinent to the interest of their readers who are citizens, taxpayers and voters.

The petition alleges that the respondent "did refuse to permit The Charleston Mail Association * * * to inspect the aforesaid records, and did refuse to provide the information alternatively requested * * *." Their request being thus refused, the petitioners applied to this Court, seeking a writ of mandamus. On May 24, 1965, this Court granted a rule returnable on June 15, 1965. Various pleadings were filed and, on the return day, the cause was submitted for decision upon the pleadings and oral arguments of counsel for the respective parties.

Of basic concern in this proceeding is whether the petitioners have established a clear legal right which warrants the granting of relief by mandamus. While the respondent readily concedes "that mandamus is the proper remedy to enforce a right to inspect public records, if such right, in fact, exists," he says that no such right exists in this instance. He asserts that those seeking to enforce an alleged right to examine or inspect public records must show that their purpose is a proper and legitimate one which will benefit the public generally and not one based upon mere whim or idle curiosity.

Are the records which the petitioners seek to examine public records? A public record has been defined as "a written memorial made by a public officer authorized by law to perform that function and intended to serve as evidence of something, said, or done." Bouvier's Law Dictionary, Rawle's Third Revision, Vol. 3, page 2843. As was said in *Coleman* v. *Commonwealth,* 25 Gratt. 865, "Whenever a written record of the transactions of a public officer in his office, is a convenient and appropriate mode of discharging the duties of his office, it is not only his right but his duty to keep that memorial, whether expressly required so to do or not; and when kept it becomes a public document * * *." See also *State ex rel. Beckley Newspapers Corporation* v. *Hunter, Clerk,* 127 W. Va. 738, 34 S. E. 2d 468.

That the Treasurer of the State of West Virginia is a public officer is not and can not be questioned. Admittedly the treasurer has many and varied duties but pertinent to this inquiry Code, 1931, 12-1-10, provides: "The treasurer shall keep in his office a record showing the account of each depository, both active and inactive, under which entry shall be made showing the amount and date of each deposit, the amount and date of each withdrawal, and the balance on deposit." This is precisely the information the petitioners seek to obtain. That these records are records that the law requires the state treasurer to keep is unalterably clear. We therefore hold that these records are indeed public records.

Having decided that the records above referred to are public records, we must determine if this fact alone entitles the petitioners as a matter of law to inspect them. In *State v. Harrison,* 130 W. Va. 246, 43 S. E. 2d 214, this Court said: "The right to inspect a public record does not attach to all persons or to every situation. He who asserts that right must have some interest in the record of which he seeks inspection, and the inspection must be for a legitimate purpose. There is no right of inspection of a public record when the inspection is sought to satisfy a person's mere whim or fancy, to engage in a pastime, to create scandal, to degrade another, to injure public morals, or to further any improper or useless end or purpose." See also *Payne* v. *Staunton,* 55 W. Va. 202, 46 S. E. 927; and *Taxpayers Ass'n. of Cape May* v. *City of Cape May,* 2 N. J. Super. 27, 64 A. 2d 453.

In accordance with the principles expressed in the *Harrison* case, *supra,* the petitioners, to be entitled to the requested relief, must have some interest in the records which they seek to inspect. The petitioners Clay and Mellace are citizens, voters and taxpayers of this state and as such allege that they are interested in "being fully informed on the activities and conduct of its government and the elected officers thereof and the handling of public monies." It is indeed difficult to envision a greater interest in public records which reflect the handling of public funds than that of a citizen and taxpayer whose own contribution to the public funds is directly involved. His is a real interest. It is such that, in the absence of some compelling reason to the contrary, he should be entitled to inspect the records pertaining thereto. As cogently expressed in 45 Am. Jur., Records and Recording Laws, Section 24, "The right to inspect state records that are of such nature as to be of interest to the public in general is a right that belongs to each citizen and taxpayer of the state. It is generally held that he need not show any personal or pecuniary interest in the subject matter if his inspection is made in the interest of the public weal."

In a democratically constituted society every citizen and taxpayer has an interest in the manner in which the govern-

ment is operated. The records reflecting that operation are many and varied. Where such records concern matters of primarily public interest, the public is entitled to see them. If it were otherwise, how could the citizenry determine whether public officials are properly fulfilling the functions of their office as required by law? "[T] he public business is indeed the public's business. The people have the right to know." *Moore* v. *Board of Freeholders of Mercer County,* 76 N. J. Super. 396, 184 A. 2d 748. Considering the public nature of the records involved in the instant case, we subscribe to the above statement by the New Jersey Court and hold that the petitioners have sufficient interest therein to entitle them to the right of inspection. See *Nowack* v. *Fuller, Auditor General,* 243 Mich. 200, 219 N. W. 749, 60 A. L. R. 1351, and *Clement* v. *Graham, Auditor,* 78 Vt. 290, 63 A. 146, Ann. Cas. 1913 E. 1208.

Not only must one desiring to inspect public records have an interest therein but such inspection must be for a useful and legitimate purpose. *State* v. *Harrison,* 130 W. Va. 246, 43 S. E. 2d 214; *Hall* v. *Staunton,* 55 W. Va. 684, 47 S. E. 265; *Payne* v. *Staunton,* 55 W. Va. 202, 46 S. E. 927. The respondent contends that no useful purpose would be served by furnishing the petitioners with the alternatively requested information. He asserts that such information would tend only to confuse and mislead the public. This could be a valid assertion if the only information supplied by the respondent was the balance in the designated banks on one specific day. However, the petitioners requested an opportunity to inspect all of the records which the respondent, by statute, is required to maintain, pertaining to deposits in such banks.

These records, as required by Code, 1931, 12-1-10, show the amount of deposit in each bank, the date thereof, the amount of any withdrawal, the date thereof and the balance in the account at the end of each day. This pertains to both active and inactive depositories. From an inspection of the daily balances in the active depositories over a continuous three months period, the average daily balance in each depository can be readily determined. Under the pro-

visions of Code, 1931, 12-1-5, as amended, the board of public works may require the banks, wherein state funds are deposited, to pay interest to the state on the daily average balance. That code section provides, "Interest, if charged, shall be paid every three months * * * and shall be computed upon the average daily net balances."

While the requirement of interest payments is discretionary, it becomes clear from the foregoing that an inspection of the required records would afford citizens and taxpayers information which could readily apprise them of the amount of interest the state could derive from its bank deposits. This information is material and useful to the public. Many factors must be considered to determine the advisability of requiring interest payments. However, the citizens, in making a proper evaluation of the present practices and of those permitted under Code, 1931, 12-1-5, as amended, would find the information available in the subject records to be particularly useful.

It may be said, and it is argued in the brief of the respondent, that the petitioners could use the information thus gained to mislead the public and thereby subject the respondent to undue criticism. While this possibility exists, no charge of improper motive or purpose has been made in this proceeding. In the absence thereof we can not impugn the motives of the petitioners. In the state of this record it must be assumed, and it is expected, that the petitioners will use the desired information for the presentation of a true, accurate and complete account of state monies in bank depositories. Likewise, no allegation is contained in this proceeding that the purpose for the inspection of the subject records is anything other than legitimate. The petitioners, as citizens, taxpayers and voters of this state are engaged in the business of publishing and distributing a newspaper. As noted above, their avowed purpose in obtaining the desired information is to publish such information in their newspaper so that the public may be apprised of the current and past practices of the state government respecting the bank deposits of public monies. This is a legitimate purpose.

Having concluded that the records involved in the instant proceeding are public records of general interest to the citizens, taxpayers and voters; that the petitioners have an interest in such records; and that the requested inspection is for a useful and legitimate purpose, we believe that it has been established that the petitioners have a clear legal right to inspect such records and that the respondent has a corresponding duty to permit the inspection thereof. However, this right of inspection is not without limitation. It is subject to reasonable rules and regulations designed to guard against the loss or destruction of such records and to avoid unreasonable disruption of the functioning of the office in which they are maintained.

Subject to such reasonable rules and regulations, the writ prayed for will be awarded.

*Writ awarded.*