**CITY OF ST. MATTHEWS, a Municipal Corporation, et al., Appellants,**

v.

**The VOICE OF ST. MATTHEWS, INC., Appellee.**

Court of Appeals of Kentucky.

Nov. 22, 1974.

J. W. Jones, Louisville, for appellants.

Henry R. Heyburn, Brown, Todd & Heyburn, Louisville, for appellee.

Virginia Roberson Collins, Louisville, Amicus Curiae League of Women Voters of Louisville & Jefferson County & League of Women Voters of Kentucky.

VANCE, Commissioner.

This is an appeal from a judgment which ordered the City of St. Matthews, a fourth-class city located in Jefferson County, Kentucky, hereinafter referred to as the city, to grant access to the Voice of St. Matthews, a newspaper published and circulated in the city, hereinafter referred to as the newspaper, to certain records kept by the city with the right to inspect and copy those records. The records to which the judgment is applicable are designated in the judgment as follows:

"1. All of the journals of the proceedings of the City Council and all records and papers required by law to be kept pertaining to all proceedings of the City Council. All City ordinances, resolutions and amendments thereto. Minutes of the City Council and minutes of any committee of the City Council or department or agency of City government. Petitions and official communications, as well as findings and orders, relating to zoning in said City.

"2. All of the dockets of the City Police Court and all records and papers required by law to be kept pertaining to all

proceedings in the City Police Court, including without limitation, traffic accident reports; traffic arrest citations and general police arrest records.

"3. All records, papers and documents required to be kept and used for the purpose of ascertaining or discovering the true condition of the fiscal affairs of the City which are necessary for the purpose of making an audit of its accounts, including without limitation, payroll records, building permits; bills and invoices for all purchases and sales by the City; official communications and office memoranda to or from public officials and to and from employees of the City relating to financial or fiscal affairs of said City; invitations to and bids on all City projects and City works; contracts for all City projects and City works; budgets, ledgers, check books and financial records and statements of the City as well as any audits thereof.

"4. Tax records, including tax assessment records and records of tax bills and payments, cancellations and abatements thereof.

"5. Semi-annual statements made by the custodian of the sinking fund of the City to the City Legislative body and any separate fund of monies or securities belonging to the City."

The city has pursued a policy of making available to the newspaper the minutes of the city council meetings, ordinances and resolutions adopted by the council, docket books of the city police court and any other record in which the newspaper has such a special interest as to enable it to maintain or defend an action for which the record sought would furnish evidence or necessary information which would aid it in maintaining or defending such an action in court.

Adherence to this policy by the city has effectively prevented the newspaper from having access to other records which it claims are public records and in which it has an interest, among which are: tax as-

sessment records, records of tax bills and payments and cancellations or abatements thereof, payroll records, building permits, traffic accident reports, traffic arrest citations, general police arrest records, bills and invoices of the city, communications to and from public officials relating to official business of the city, invitations to bid and bids received for public projects, records of zoning authorities and financial records including check books and ledgers.

The city justifies its position by relying upon a common-law rule that every person is entitled to the inspection, either personally or by his agent, of public records only if he has an interest therein which is such as would enable him to maintain or defend an action for which the document or records sought can furnish evidence or necessary information.

This common-law rule is stated generally in 66 Am.Jur.2d, Records and Recording Laws, Section 15.[1]

The city contends that this court adopted the common-law rule in Courier Journal and Louisville Times Company v. Curtis, Ky., 335 S.W.2d 934 (1960), and Fayette County v. Martin, 279 Ky. 387, 130 S.W.2d 838 (1939).

We do not construe our holding in Fayette County v. Martin, supra, as adopting the common-law rule. There is language in the opinion which concedes the common-law rule to be as stated, but the decision turns upon the fact that a valid statute prohibited the inspection of the document sought therein even though the necessary common-law interest to demand inspection may have been shown.

In Courier Journal and Louisville Times Company v. Curtis, supra, the issue was whether a newspaper was entitled to require a circuit judge to order a court reporter to transcribe from his notes a statement made to the judge in chambers by a defendant in a criminal proceeding. Without deciding whether the document sought was in fact a public record, this court held that the newspaper did not have the standing required by the common-law rule to demand that the statement be transcribed and be made available to it. The question of the advisability of the adoption by this state of the common-law rule was not considered in that opinion for it was assumed therein that the rule had already been adopted in Fayette County v. Martin, supra.

Even though *Curtis* was based squarely upon the common-law rule, the court engrafted some new concepts upon that rule by its use of the following language:

"* * * Generally the interests required under the rule must be alleged and proven. However, in order to effectuate the notice-giving purpose of various recording acts such interest shall

---

1. This section notes that the English common-law rule has received some recognition in this country but it is not generally enforced here. The only case cited as supporting the common-law rule is Courier Journal & Louisville Times Company v. Curtis, Ky., 335 S.W.2d 934. The general rule in this country is stated as follows: "Good public policy is said to require liberality in the right to examine public records. Thus, where there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed. In jurisdictions where the right to inspect public records extends only to those who show some special interest in them, such interest must generally be alleged and proved. But some jurisdictions hold that there is an absolute right to inspect a public document in the absence of specifically stated sufficient reasons to the contrary. Another approach is that the common-law right to inspect public records is not absolute, but is to be determined by whether permitting inspection would result in harm to the public interest which outweighs the benefits; but that public policy favors the right of inspection of public records and documents and it is only in the exceptional case that inspection should be denied. However, where there is an express or implied legislative intent that certain records be open to public inspection, the right is absolute and the custodian has no authority to deny inspection." 66 Am.Jur.2d, Records and Recording Laws, Section 12.

hereafter be presumed as to the following records:

"(1) Records of all papers, documents and instruments required or permitted by statute to be recorded, or noted of record, in books provided by public funds for that purpose.

"(2) All financial records required by statute to be kept in books so provided.

"The presumption shall govern where papers, documents and instruments are required or permitted by statute to be recorded in such books and have been lodged for that purpose but unrecorded."

As a result of this amendment to the common-law rule a newspaper was entitled to inspect many recordable documents without demonstrating the interest otherwise required by the common-law rule.

Latching on to this pronouncement in *Curtis* the trial court in the instant case found statutory authority which was interpreted as requiring or permitting the recording of most of the records which the newspaper desired to inspect. Thus the judgment appealed from recognized the necessity of the interest required by the common-law rule but declined to require any actual showing of that interest upon the basis of the presumption stated in *Curtis*.

The statutes relied upon by the Jefferson Circuit Court do not sustain the entry of a judgment as broad as the judgment entered in this case. KRS 25.040, 26.020, 26.290 and 26.590 designate the police court as a court of record and require the judge thereof to keep a full record of his judicial proceedings in books provided for that purpose. There is a distinction however between police court records and police records. The statutes do not require the keeping of police records such as arrest

records and citations, accident reports and police department memoranda.[2]

KRS 92.405 requires fourth-class cities to have an annual audit and to provide a published report of the audit in pamphlet form to each voter who requests it. The statute does not provide that each voter may examine all of the documents which were available to the auditor.

KRS 92.160 provides for a tax collector in fourth-class cities and provides that the city treasurer or city clerk may perform the duties of tax collector. KRS 92.170 provides that when the city clerk acts as the tax collector he shall keep in his office in a book provided for that purpose a record of all assessments for street improvements. In the City of St. Matthews the city clerk did not act as the tax collector, and the statutes cited do not expressly require or permit the recording of tax records generally in books provided for that purpose.

In our view the statutes relied upon do not support the broad rights of inspection of municipal records permitted by the judgment. We are of the opinion however, that the question of the right of members of the general public to inspect public records is of such basic importance as to require a re-examination of our law upon the subject.

The extent to which public records should be subject to inspection is a matter of public policy. Ordinarily we look to the General Assembly, as the most direct representatives of the people, to establish public policy in matters such as this but, except in limited areas, the General Assembly has not legislated precisely upon this subject. In these circumstances it is entirely proper and strictly in keeping with the ancient tradition of the common law for the courts to provide a policy when necessity demands it.

---

2. KRS 189.630 provides that any city may require the filing of accident reports, but such reports shall be for the confidential use of the city.

We cannot find any valid basis in our society for the imposition of the requirement of the interest stated in the common-law rule as a prerequisite to the right to inspect public records. The rule originated under a monarchic form of government in which the people were subjects of the Crown. It seems to us that a rule which had its genesis under that type of government is likely to be ill-suited for application in a democratic society where the government is administered by elected representatives of the people.

■ Intelligent selection of elected officers depends upon an informed citizenry and for that reason it appears to us that public policy should favor rather than impede the right of the individual citizen to be informed as to matters relating to the operation of his government.

■ We consider the necessity of showing an interest such as would enable a person to maintain or defend a lawsuit as a prerequisite to his right to inspect a public record to be an unwarranted impediment to the right of people generally to acquire information concerning the operation of their government. To the extent that Fayette County v. Martin, supra, and Courier Journal and Louisville Times Company v. Curtis, supra, imposed this requirement, they are overruled.

■ We do not mean to say however that there exists in all persons a carte blanche right to inspect public records absent the showing of some prerequisite interest. It is generally recognized that no person has the right to demand inspection of public records to satisfy idle curiosity or for the purpose of creating a public scandal. 46 Am.Jur.2d Records and Recording Laws, Section 17. We therefore hold that the right to demand inspection of public records must be premised upon a purpose which tends to advance or further a wholesome public interest or a legitimate private interest.

■ Henceforward, subject to this showing of interest, every person shall be entitled to inspect the public records of the state or any county or municipality therein provided:

(1) The inspection shall be conducted at reasonable times and places and in such a manner as not to unduly interfere with the proper operation of the office of the custodian of the records.

(2) The records sought to be inspected are not exempt from inspection by law.

(3) The disclosure of the information would not be detrimental to the public interest or violative of confidentiality under a countervailing public policy entitled to greater weight than the policy favoring free access to public records.

■ When a demand for the inspection of public records is refused by the custodian of the record, the burden shall be upon the custodian to justify the refusal of inspection with specificity.

■ A newspaper has the same right to inspect public records as a member of the general public. Courier Journal and Louisville Times Company v. Curtis, supra.

We find precedent and authority for this decision from many sources. As we have already noted the common-law rule has not been adopted generally in this country.

Other jurisdictions have reached the same result we reach here. In State ex rel. Charleston Mail Association v. Kelley, 149 W.Va. 766, 143 S.E.2d 136 (1965), the right of a newspaper to inspect public records was upheld in the following language:

"In a democratically constituted society every citizen and taxpayer has an interest in the manner in which the government is operated. The records reflecting that operation are many and varied. Where such records concern matters of primarily public interest, the

public is entitled to see them. If it were otherwise, how could the citizenry determine whether public officials are properly fulfilling the functions of their office as required by law? '[T]he public business is indeed the public's business. * * *.'"

A similar conclusion was reached in Michigan in Nowack v. Fuller, 243 Mich. 200, 219 N.W. 749 (1928).

Although our General Assembly has not specifically declared a public policy of free access to public records, there are indications that such a policy is favored. KRS 171.650 provides that unless otherwise provided by law, all papers, books, and other records of any matters required by law or administrative rule to be kept by *any agency,* and all records arising from the exercise of functions authorized thereby, are public records and shall be open to inspection by any interested person subject to reasonable rules as to time and place of inspection established under KRS 12.080.

KRS 85.340 pertaining to cities of the third class provides that all records of such cities are public records and at all reasonable times shall be open for inspection by the public. This statute of course does not apply to fourth-class cities, but no reason is perceived by us why the public policy expressed by that statute would not also be applicable to cities of other classes.

And finally the 1974 Session of the General Assembly of Kentucky enacted House Bill No. 100, popularly known as the "open meetings" law, the tenor of which is to prohibit secrecy in government.

Our past decisions concerning the right to inspect public records have frequently bypassed the question of whether the document sought to be inspected was indeed a public record and were disposed of upon the ground of lack of the requisite interest.

The decision here will remove the impediment of lack of interest in many cases but may serve to focus attention upon the question of what constitutes a public record.

■■■ We cannot anticipate what considerations may be posed in determining whether or not a record is a public record but ordinarily it would appear to be beyond cavil that all records maintained by a state, county or municipal government as evidence of the manner in which the business of that unit of government has been conducted are public records.

The trial court here found it unnecessary to its decision to determine whether or not the documents sought to be inspected by the newspaper were public records and of course had no opportunity to determine whether any of the documents sought were exempt from inspection under the limitations upon the right to inspect set forth in this opinion.

We note that accident reports are made confidential for use by the city by virtue of KRS 189.630, and it appears likely that it would not be in the public interest to disclose the details of some police investigations prematurely for otherwise the purpose of the investigations might be thwarted.

We also think that part of the judgment which grants the right to inspect all tax records is overly broad. The city contends that information contained in occupational tax returns is of a confidential nature, the disclosure of which would give competitive advantage to others engaged in a like occupation. There may be other tax records, not specifically called to our attention by this record, which would be exempt from inspection upon proper consideration. KRS 131.190 is indicative of some legislative policy in this regard.[3]

3. KRS 131.190:
"(1) No present or former commissioner or employe of the department of revenue, member of a county board of supervisors, property valuation administrator or employe thereof, or any other person, shall divulge any information acquired by him of the affairs of any person, or information regarding the tax schedules, returns or reports required to be filed with the department or other proper

There may be further questions presented as to other specific documents for which inspection is sought. We therefore vacate the judgment in its entirety and remand for further consideration in the light of the criteria set forth in this opinion and direct that a new judgment be entered in conformity therewith.

All concur.

officer, or any information produced by a hearing or investigation, insofar as the information may have to do with the affairs of the person's business. This prohibition does not extend to information required in prosecutions for making false reports or returns of property for taxation, or any other infraction of the tax laws, nor does it extend to any matter properly entered upon any assessment record, or in any way made a matter of public record, nor does it preclude furnishing any taxpayer or his properly authorized agent with information respecting his own return.

"(2) The commissioner shall make available any information for official use only and on a confidential basis to the proper officer, board or commission of this state, any Kentucky city, any other state, or the federal government, under reciprocal arrangements whereby the department shall receive similar or useful information in return.

"(3) Statistics of tax-paid gasoline gallonage reported monthly to the department of revenue by any licensee under the gasoline excise tax law may be made public by the department."