# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## TATE AND ALS. V. TATE AND ALS.

### August 9th, 1888.

1. BONDS—*Possession—Ownership—Case at bar.*—Bond of L., dated 1860, for $3,000 payable to A. was in B.'s possession in 1866, endorsed with credit "for $1,678, Confederate money," as of June, 1863, and claimed by him. L. died in 1865, A. in 1876. In A.'s life-time, in 1869, B. notified one of L.'s administrators that he held and claimed the bond, and in 1874 exhibited it to the other, A. living near, being related to, and surety on the bond of said administrators, and neither he, in his life-time, though needy, nor, after his death, his administrator, nor his family, ever claimed the bond. The credit corresponded with M.'s receipt to L., only latter specified that the $1,678 was to be credited on L.'s "*notes*" due M. There was no assignment of the bond endorsed thereon, or other evidence of B.'s ownership. In 1870, B. brought two actions of debt on bonds of L., executed to C. and in B.'s possession, without assignment or other proof of ownership, and two actions of *assumpsit* on a draft and on an open account against L.'s administrators. In July, 1885, in suits (heard together) against administrators of J. and of T.—who, for a consideration, had, in 1865, in writing, undertaken to pay the debts of L.—M. set up this bond for $3,000, less the credit aforesaid, as a debt of L. to him, which was allowed and reported by the commissioner, and was excepted to on the ground that said bond "was without assignment, and the only claim to ownership was the isolated fact of possession";

HELD :

By all the facts and principles of this case, M.'s ownership of the $3,000 bond is established. *Brown* v. *Taylor*, 32 Gratt. 135 ; *Hodnett* v. *Pace*, 84 Va. 873.

2. BILL OF REVIEW—*After-discovered evidence—Case at bar.*—The alleged after-discovered evidence set up as grounds for reviewing and reversing the decree in this case, was hearsay and inadmissible, merely cumulative, and might, by use of reasonable diligence, have been discovered before the decree complained of ;

HELD :

No ground for review.

Appeal from decree of circuit court of Smyth county, entered July 19th, 1886, in the causes of Mary C. Tate and als. *v.* Thomas M. Tate's Ex'ors; V. S. Morgan *v.* John B. Tate's Adm'r and others; A. H. Tate and als. *v.* Thomas M. Tate's Ex'ors and others, and M. B. Tate *v.* A. H. Tate, adm'r, and others, heard together, by which decree M. B. Tate was allowed and directed to be paid (amongst other claims) against L. H. Tate's estate, a bond for $3,000, dated March 24th, 1860, due November 24th, 1860, with credit endorsed thereon as of June 29th, 1863, for "$1,678.30, Confederate money," payable to B. F. Aker, and signed by L. H. Tate; and from decree of said court, entered April 30th, 1887, in the said causes on a bill to review the said previous decree, by which last decree the said bill was dismissed. Thereupon the executors of said Thomas M. Tate and others obtained an appeal and *supersedeas.* Opinion states the case.

*John A. & B. F. Buchanan,* for the appellants.

*John P. Sheffey,* and *Daniel Trigg,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The petition of Thomas G. Tate, Franklin Grayson and Nancy, his wife, Charles J. Shannon, executor of Thomas M. Tate, deceased, R. S. Bonham, late sheriff of Smyth county, and, as such, administrator *de bonis non* of John B. Tate, deceased, R. S. Bonham, late sheriff of Smyth county, and, as such, administrator of Susan B. Adcock, deceased, John Littrell and Mary, his wife, and David P. Graham, surviving partner in the firm of D. Graham & Son, and in his own right, and Nancy, his wife, complains of *two* decrees of the circuit court of Smyth county, rendered respectively at the July special term, 1886, and the April term, 1887, of the said court, in the following-named causes in said court depending, in which they, the said petitioners, are parties

defendant, viz: Mary C. Tate and others *v.* Thomas M. Tate's Executors; V. S. Morgan *v.* John B. Tate's Administrator and others; A. H. Tate and others *v.* Thomas M. Tate's Executor and others; M. B. Tate *v.* A. H. Tate, administrator of L. H. Tate, deceased, and others.

Among other things the object of these suits was to ascertain the indebtedness of the estate of L. H. Tate, deceased, which indebtedness had been assumed by Thomas M. Tate and John B. Tate in their life-time.

The appellee, M. B. Tate, asserted a number of claims against the said L. H. Tate's estate, among others a bond for $3,000, dated March 24th, 1860, and due on 24th of November, 1860, with a credit endorsed thereon, as of June 29th, 1863, for "$1,678.30, Confederate money," payable to. B. F. Aker, and signed and sealed by L. H. Tate. This claim was inquired of by the master commissioner, who allowed it, and reported it favorably to the court; and the court, overruling the exception to the master's report, ordered it to be paid by its decree of July 19th, 1886, special term.

The petitioners filed a petition for a re hearing of the said causes, so far as the said bond was concerned, on the grounds, first, that the said decree of July 19th, 1886, special term, is erroneous on the merits of the case, and that the circuit court should correct it without the expense of an appeal; and, secondly, because of after-discovered evidence; but the court, at its April term, 1887, refused to rehear the said causes. The errors assigned in the petition for appeal are, the decree of July 19th, 1886, special term, and the court's refusal, at its April term, 1887, to re-hear the said causes.

The only question involved in this appeal is the right of M. B. Tate to collect from the estates of John B. Tate, deceased, and of Thomas M. Tate, deceased, this aforesaid bond for $3,000, with the credit on it of $1,678.30, as of June 29th, 1863, under and by virtue of a written contract made October 24th, 1865, between L. H. Tate and wife (L. H. Tate being then on his death-

bed) and his brothers, John B. Tate and Thomas M. Tate, by which they undertook and covenanted to pay all the debts of the said L. H. Tate.

The decree of this court, in a former appeal of *Tate* v. *Tate's Ex'ors*, has decided that the estates of Thomas M. Tate and John B. Tate, deceased, are bound by the said agreement of October 24th, 1865, to pay all the debts of L. H. Tate, deceased; and the personal representatives of the said L. H. Tate, deceased, in their answer to the bill of M. B. Tate, filed in the causes, pray "that those who are bound to pay the debts of L. H. Tate's estate shall be required to pay whatever may be found to be due from the estate of L. H. Tate, deceased, if anything, to M. B. Tate." It appears, from the record, that the three brothers, Leonidas H. Tate, John B. Tate, and Thomas M. Tate, prior to the 24th day of October, 1865, owned in common, as equal partners, certain lands lying in Smyth county, Virginia, viz: one tract containing about three hundred acres, on which Leonidas H. Tate resided; and another, containing about one hundred acres, near thereto; another, known as the *Poston* place, containing about four hundred and seventy acres; another tract containing some fourteen hundred or fifteen hundred acres, on which Thomas M. Tate resided; and two other tracts, known as the "Patrick" and "Lee" places—on one of which Lee resided and claimed the right to redeem. They, the said Brothers Tate, also owned in common all the personal property held by them and the debts due to them, and they were jointly bound for the debts they or either of them owed.

A short time before the death of Leonidas H. Tate, in the expectation of dying, he was greatly exercised and concerned about the state of his affairs; and he was especially anxious to secure to his family, for a home and shelter, the place on which he resided, "free from debt and litigation." Accordingly, on the 24th day of October, 1865, Leonidas H. Tate retired from the tenancy in common, or partnership, which subsisted between him and his said two brothers, John B. Tate and Thomas M.

Tate, and a deed was executed by the said Leonidas H. Tate and Mary C., his wife, of the first part, and John B. Tate and Thomas M. Tate and Eleanor F., his wife, of the second part, reciting the tenancy in common and community of interest, both in all the lands and personalty and debts held by the three said brothers, or owed by them, and saying: "Now, therefore, for a full, complete and final settlement of all their matters, as well those relating to the lands as those relating to the personal property and debts to or from them, the said Leonidas H. Tate and Mary Caroline, his wife, do hereby release, relinquish and forever quit claim to the said John B. Tate and said Thomas M. Tate, all their right, title and interest of, in and to the said tract of four hundred and seventy acres, more or less, known as the Poston place; the tract of fourteen hundred or fifteen hundred acres, more or less, lying on the north fork of Holston, where Thomas M. Tate now lives; also the Patrick place and the Lee place, or the money arising from the redemption of said Lee place; and also do release all claim to all the debts due to the· said parties, except a debt on R. H. Richardson, now in litigation in the circuit court of Smyth, which is to be equally divided between the three parties, L. H. Tate, J. B. Tate and Thomas M. Tate, if collected; also to all the personal property, stock, etc., on said lands or in the actual use and possession of said John B. Tate or Thomas M. Tate; and the said John B. Tate and Thomas M. Tate and Eleanor F., his wife, on their part, do release, relinquish and forever quit claim to the said Leonidas H. Tate all right, title, interest or claim to the said tract of three hundred acres, more or less, on which said Leonidas H. Tate lives; also to the said tract of about one hundred acres adjacent thereto; also to all the stock and personal property on both places; and do further bind themselves to pay all the debts due from the said Leonidas H. Tate, John B. Tate and Thomas M. Tate, together with any sum that may be in arrear towards the purchase-money of the Poston place, or may be recovered against them by the

widow and heirs of H. D. Poston, so as to leave the said Leonidas H. Tate free from debt and litigation."

This deed of October 24th, 1865, is duly recorded in the Smyth county court clerk's office.

The tenancy in common or community of property continued to exist between John B. Tate and Thomas M. Tate, down to the death of John B. Tate in 1871.

The bill charges, and the record shows, that the bulk of the indebtedness which weighed so heavily upon the dying solicitude of Leonidas H. Tate, and from which he desired and stipulated to be freed, were debts due to the appellee, M. B. Tate, and that he owed, comparatively, but little beside and outside of them; and without them, it does not appear that there was any adequate consideration moving Leonidas H. Tate to receive a share of the partnership estates utterly disproportioned and inequitable, even taking them into account. He was entitled to one-third of the property of the partnership, and the share assigned to him is very far less in value than one-third; but which he accepted in view of death and with the assurance of leaving his family in a home "free from debt and litigation." The *"Poston"* place and the River place, upon which Thomas M. Tate resided, of fourteen hundred or fifteen hundred acres, are worth more than $38,000, to say nothing of the *"Patrick"* place and the *"Lee"* place, and the debts due to the partners, and the large personal property, stock and appointments, which they received with these said farms. And it is incredible that L. H. Tate would have made the unfair and grossly unequal division, by the deed of October 24th, 1865, with John B. Tate and Thomas M. Tate, if he did not owe the $3,000 bond, with the credit endorsed thereon as of June 29th, 1863.

That the bond in question is the bond of L. H. Tate is not controverted; the signature is proved and admitted, withal. The question is one of ownership. Whose property is it? What right has M. B. Tate to it? It is payable to B. F. Aker, and it has no assignment on it; and it is contended (not by B.

F. Aker, or his heirs, or personal representatives—they make no claim or controversy—but only by those who assumed to pay it, and who are bound to pay it, to whomsoever it may rightfully belong) that, because M. B. Tate sued on other claims which he held against the estate of L. H. Tate, deceased, in 1875, and did not sue upon this bond at that time, nor until B. F. Aker was dead, therefore it raises a presumption that he is not in rightful possession of the bond and cannot assert his legal ownership thereto. M. B. Tate is called on to prove how, and when, and for what consideration, he became possessed of this bond for $3,000, payable to B. F. Aker; and yet, because of the death of B. F. Aker, of L. H. Tate, and of John B. Tate and Thomas M. Tate, who, if living, might prove all about it, M. B. Tate's mouth is sealed. It is not charged that it is not the bond of L. H. Tate, or that there is anything upon the face of the bond itself to throw suspicion on it; and counsel at the bar of this court are emphatic to deny the charge or implication that M. B. Tate possessed himself of the said bond *surreptitiously;* their contention is, that, because the bond has no written assignment on it by the obligee, B. F. Aker, and because M. B. Tate did not sue on it, at law, in 1875, when he did sue upon other claims against the estate of L. H. Tate, deceased, it is not his property. Among the claims asserted against the estate of L. H. Tate by M. B. Tate, and which were allowed him, without question or controversy as to his rightful ownership, were the two C. C. Tate bonds, viz: the bond of L. H. Tate to C. C. Tate for $1,204.48, and another bond of the same to the same for $113; and yet these bonds were held and asserted against the estate of L. H. Tate, deceased, by M. B. Tate without any assignment, or proof of his ownership, other than his possession. As remarked by the learned judge of the circuit court in his opinion filed in this cause, "It is a practice so common, and so frequently occurs in practice and in suits brought by holders of bonds, that no assignments of bonds, *bona fide* sold (transferred) are made, that it may be judicially recognized. The two C. C.

Tate bonds, in this very controversy, though M. B. Tate's right to them is not questioned, are held without assignment."

M. B. Tate and L. H. Tate had many and large dealings with each other; and, on 29th day of June, 1863, they had a settlement of these mutual accounts, which resulted in the following receipt: "Received of L. H. Tate, sixteen hundred and seventy-eight dollars and thirty cents, balance due on *settlement*, which amount is to be credited on his notes due me. June 29th, 1863.— Signed, M. B. Tate."

The said $3,000 bond is credited as follows: "Credit by ($1,678.30) sixteen hundred and seventy-eight dollars and thirty cents, in Confederate money, June 29th, 1863.—Receipt." ·

But it is insisted that the receipt shows that the $1,678.30 was to be credited on the *notes* due from L. H. Tate to M. B. Tate, and not on this *bond*. The term *note* is common parlance for *bond;* and even if it were proved that M. B. Tate had acquired and then owned the C. C. Tate bonds (which is not proved), at the date of that settlement and receipt, June 29th, 1863, that receipt exceeds the aggregate of all the other notes then held by M. B. Tate against L. H. Tate.

The testimony of J. J. Mahone, unimpeached, is distinct and positive, that M. B. Tate had in his possession this $3,000 bond in 1866, *with this credit then on it,* claiming it as his property, and filing it with a list of his other choses in action with Robinson, Tate & Company of Lynchburg, Virginia, of which firm both he and said J. J. Mahone were members at that time. It was asserted as his own property before Commissioner Sexton in the Mary C. Tate and others, and the A. H. Tate and others, cases ; and it is referred to in the report of the said master commissioner in response to decrees of the circuit court of Smyth county, entered April 1st, 1873, and 23d of September, 1879, in the said causes, directing, *inter alia,* an inquiry and account showing "what debts are still due and outstanding against the estate of L. H. Tate," as follows: "Then applying and deducting from the amount so left, the

credit endorsed on the B. F. Aker note, 29th of June, 1863, $1,678.30, and interest on the amount so credited," &c. In the life-time of B. F. Aker (who died in 1876), M. B. Tate notified the administrator of L. H. Tate that he held and claimed this bond, in 1869 ; and again in 1874, he exhibited it to A. H. Tate, administrator of L. H. Tate, and showed him how he had endorsed the $1,678.30 credit. B. F. Aker was then alive, lived close by A. H. Tate and Mary .C. Tate, and was closely related to them, by blood, and by being surety on their administration bond for L. H. Tate's estate. He never did, in his life-time, assert any claim to, or interest in, the said $3,000 bond ; although the evidence shows that he was in very straitened circumstances, if not wholly insolvent, from 1863 to 1876, when he died.

B. F. Aker's family, nor his personal representative, never disputed M. B. Tate's right of property in the bond, or set up any claim in or to it. It was in the record, as his property, of the appeal to this court by Mary C. Tate, administratrix, and A. H. Tate, administrator of L. H. Tate, deceased, against Thomas M. Tate's executors and others, which was allowed March 1st, 1881; and in the compromise made in 1874 of the suit to enforce the judgments obtained by M. B. Tate against the estate of L. H. Tate, Mary C. Tate and A. H. Tate, his personal representatives, had full notice of the $3,000 bond, and of M. B. Tate's possession and assertion of it as his own property. Up to this time no other person than M. B. Tate, the holder and possessor of this $3,000 bond, has asserted any right, title or interest in it. B. F. Aker cannot be presumed to have lost it, for such a fact he would have mentioned; he survived L. H. Tate for eleven years; and it has been shown that, as surety upon the administration bond of L. H. Tate's personal representatives, he was fully aware of all the litigation against his estate, and of M. B. Tate's possession and assertion of ownership of the $3,000 bond-claim against the estate. It cannot be supposed that M. B. Tate stole the bond. The presumption of innocence rebuts it. That he received it as agent, is rebutted

by B. F. Aker's long unbroken and absolute silence, and by his needy and broken circumstances. The reasonable and fair presumption is, that M. B. Tate is in rightful possession of the bond. He was not bound to sue upon it at law; and the attempt to deduce any prejudicial inference from his failure to do so. is futile. He did sue upon it, in the chancery causes, long within the statutory period when any presumption against his right could arise.

Lawson on Presumptive Evidence, *Rule* 89, says: "And the possession of personal property raises a presumption of title in, and ownership of, the property by the possessor." *Note* 1: "No principle is more fully settled by the uniform weight of authority, than that possession is *prima facie* evidence of title; and that upon proof of that fact, the party proving it is entitled to vindicate any violation of his rights thus established. Possession, indeed, may be considered the primitive proof of title, and the natural foundation of right." "A person's signature to a deed is proved, *i. e.*, that it is his handwriting. The sealing and delivery of the deed is presumed." *Rule* 18, *Illustration IX.*

*Illustration XVII.* "There is no proof when a deed was delivered—the presumption is that it was delivered on the day it bears date." (Citing 41 Ill. 227; 104 Ill. 416; 41 New York, 397; 78 Ill. 533.) See *Harman* v. *Oberdorfer*, 33 Gratt. 497.

*Illustration XIX.* "A deed is duly attested—the presumption is that it was duly delivered." (Citing 13 Pick. 69.)

Under *Rule* 89, page 420, *Illustration IV*, "In C.'s hands are a number of bonds—the presumption is that he owns them."

*Illustration V.* "A. has possession of a note—this presumes ownership in A. of that note." (Citing 13 Ala. 440; 4 Ind. 522; 15 Ind. 280; 5 La. Ann. 120). See *Moon* v. *Hawks*, 10 Amer. Dec. 725. "So also, as men generally own the personal property they possess, proof of possession is presumptive proof of ownership." (1 Greenleaf's Evidence, sec. 34, note).

"In all cases, especially where it is long continued, possession is regarded as strong evidence of right." (2 Starkie on Evidence,

896, 899, 900). "The law presumes that a bond or other specialty was made upon a good consideration." 2 Starkie on Evidence, pp. 929–30, and pp. 666–7.

"The law presumes against *fraud.*" 2 Starkie on Evidence, p. 934.

The signature of L. H. Tate to the $3,000 bond being proved, the obligee, B. F. Aker (nor his heirs nor his representatives), setting up no claim, and the possession for all the long period of time being with M. B. Tate, with all presumptions in his favor, the burthen of proof of payment, or of failure of consideration, or of fraud in the procurement of the bond, was upon those assailing it. Fraud cannot be established by suspicion or innuendo, it must be proved.

The decree of July 19th, 1886, special term, is correct upon the merits, and there is no error of law apparent in the decree. And the court did not err in rejecting the petition for a re-hearing, or refusing to treat it as a bill of review. The causes had been pending for many years; all the parties were before the court, and the matters set forth in the petition had been discussed and controverted in the causes for a long period; and the petition was but a rehash of the old charges made so freely in the progress of the causes, unsupported by proof and disproved by incontrovertible facts in the record, and finally disposed of by the court after full opportunity to sustain the charges. The so-called new evidence of the witness, S. D. Sanders, if admitted, could not change the result. He lived in the county of Wythe, was well known to all the parties, was a kinsman of Mrs. B. F. Aker, and was co-surety on the administration bond of Mary C. Tate and A. H. Tate on the estate of L. H. Tate, deceased, as far back as 1866. He was watching their administration, and they were informed and familiar with his views and whereabouts. His testimony could always have been obtained, but it was hearsay entirely and inadmissible, and at best was only cumulative to that of the witness R. S. Bonham, detailing his conversations with Mary C. Tate and of the so-called answer of said Mary C.

Tate.    There was nothing new or material in the affidavit of S. D. Sanders, and it was contradicted by the record in the Cunningham suit, filed by the petitioners themselves, and by the receipt of John A. Campbell, commissioner in that suit, who knew all the facts about the sale and purchase of the Jamison land, as shown by the record, which is the best evidence and cannot be disputed.    Judge Campbell was the counsel for the petitioners in these Tate causes, down to his death, and he and his brother, Joseph T. Campbell, were the commissioners who sold the Jamison land to B. F. Aker, collected and disbursed the purchase-money, and conveyed the land to M. B. Tate.    See *Campbell* v. *Campbell*, 22 Gratt. 674 ; *Carter* v. *Allen*, 21 Gratt. 224–245 ; *Barnett & Co.* v. *Smith & Co.*, 5 Call, 102 ; and *Harman* v. *McMullin*, *ante*, p. 187.

The conclusion, from all the facts and principles of this case, is that both the decrees complained of are free from any error injurious to the appellants as to the claims of M. B. Tate, and they are *affirmed*.

HINTON, J., dissented.

DECREES AFFIRMED.