PRESENT:  All the Justices

STATE OF MAINE

v.   Record No. 080987                              OPINION BY
                                          JUSTICE BARBARA MILANO KEENAN
                                                 February 27, 2009
RICHARD L. ADAMS, JR.

                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            R. Terrence Ney, Judge

     This appeal concerns an action to quiet title to a copy of

the Declaration of Independence (the Declaration) that was

printed in July 1776.  We consider whether the circuit court

erred in holding that a Virginia resident who purchased this

document had superior title than that claimed by the State of

Maine, which contended that the document was a public record

owned by the Town of Wiscasset, Maine.

     In July 1776, after the Second Continental Congress

approved the Declaration of Independence, each of the colonial

delegations was charged with informing its residents about the

colonies' decision to separate from England.  The Massachusetts

Executive Council (the Executive Council), an entity that shared

governing responsibility with the Massachusetts legislature,

issued an order directing that copies of the Declaration be

printed and delivered to the ministers of all churches in

Massachusetts so that the document could be read to the ministers' congregations.[1]

The Executive Council commissioned E. Russell, a private printer in Salem, Massachusetts, to print these copies of the Declaration. Such copies of documents intended for widespread distribution were commonly referred to as "broadsides."

The broadsides that Russell printed contained the Declaration's text and the Executive Council's order directing distribution and promulgation of that document. The broadsides also included the Executive Council's additional order requiring that the ministers, after reading aloud the Declaration, deliver the broadsides to the town clerks. The order directed the town clerks to record the Declaration's text in their respective town record books "to remain as a perpetual Memorial thereof." Neither the Executive Council's order nor any other law directed the town clerks regarding the proper disposition of the broadsides after their contents were transcribed in the town record books.

The broadside at issue in this case (the print) bears a handwritten notation on its reverse side stating that the print was delivered to the Reverend Thomas Moore in the Town of Pownalborough and read to his congregation. An additional

---

[1] In 1776, Massachusetts encompassed an area of land that today includes both Massachusetts and Maine.

notation indicates that the Reverend Moore later delivered the print to the Reverend John Murray, pastor of a church in Booth Bay, Massachusetts, about 11 miles from Pownalborough.

Also appearing in handwritten text on the reverse side of the print is the following notation:

> To [Pownalborough] Town Clerk according to the with in [sic] Authority having read the within Proclamation. I return it to you to be Recorded as ye law directs. Thos. Moore. Pownalborough October 19th, 1776.

On November 10, 1776, Edmund Bridge, the town clerk of Pownalborough, transcribed the text of the Declaration into the official town book in accordance with the Executive Council's order.

There is no direct evidence regarding the location of the print in the years immediately after Bridge recorded the text of the Declaration. However, certain handwritten entries on the reverse side of the print state: "from 1776 to 1784 Warrants [etc.]," "Town Warrants [etc.]," "Pownalborough," "Declaration of Independence, July 1776," and "Loose Papers no Taxes."

The location of the print remained unknown until 1995, when Harold Moore, an auctioneer hired by the estate of Anna Holbrook Plumstead (Anna), discovered the print in the attic of Anna's home in Wiscasset, Maine. The print was folded in a box containing minutes from a Pownalborough town meeting held in 1795, personal family receipts, and other papers unrelated to

town business.  Wiscasset, Maine (the town) was formerly known as Pownalborough, Massachusetts.  The town's name was changed from Pownalborough to Wiscasset in 1802, and Maine became a state in 1820.

Anna was the daughter of Solomon Holbrook, who served as the town clerk from 1885 until his death in 1929.  Pownalborough and Wiscasset have had a total of 41 town clerks during the period between 1760 and the date of trial, and Holbrook was the 28th clerk in order of service to hold that position.  Although Holbrook once owned Anna's house where the print was found, Holbrook never lived in that house.

After Harold Moore discovered the print in Anna's house in 1995, Seth Kaller of Kaller Historical Documents, Inc. purchased the print at auction for $77,000.  In 2001, Kaller sold the print to Simon Finch, a rare book dealer in London, England, for $390,000.  In 2002, Richard L. Adams, a Virginia resident, purchased the print from Finch for $475,000.

In 2005, the State of Maine (Maine), on behalf of the town, sought to recover the print from Adams based on Maine's assertion that the print was a public record owned by the town. Adams filed an action in the circuit court to quiet title to the print contending that he was its lawful owner.  The case proceeded to a bench trial.

4

The evidence at trial showed that until 1967, the Pownalborough and Wiscasset town clerks performed the duties of their part-time position from their homes.  In 1967, the town began conducting its business from a public town office.  The current town clerk testified that although a library was built in the town in 1805, it is unknown when the library began storing certain town records that now are housed there.

Jonathan S. Kiffer, Senior Vice President of Sotheby's, testified as an expert on the subject of rare documents created around the time the print was made.  Kiffer stated that broadsides like the print in question were printed as news releases or bulletins and were in the category of documents referred to as "ephemera," or items produced to serve only a brief purpose.  According to Kiffer, once the news contained in a broadside was disseminated, the broadside had fulfilled its purpose and could be discarded.

Maine presented the expert testimony of Albert H. Whitaker, Jr., a former Massachusetts State Archivist who was familiar with colonial records.  Whitaker stated that in his opinion, the standard practice for a town clerk in 1776 would have been to retain the print as a town record.  Whitaker testified that he based his opinion on the fact that the print was directed to the town clerk's attention and the town clerk actually received the print.

Whitaker also testified that a town generally would retain a document whose contents were recorded in a town book because the original document was considered a superior form of written instrument.  However, Whitaker stated that this particular town's record keeping was inconsistent regarding documents other than those relating to births, deaths, marriages, real property, elections, and town meetings.

In his testimony, Whitaker also discussed the handwritten entries appearing on the reverse side of the print.  As set forth above, those entries stated: "from 1776 to 1784 Warrants [etc.]," "Town Warrants [etc.]," "Pownalborough," "Declaration of Independence, July 1776," and "Loose Papers no Taxes." According to Whitaker, these entries indicated that the print continued to "reside" with the town's clerks for "at least a short period of time" after 1776.  However, Seth Kaller, the dealer in rare documents who purchased the print at auction in 1995, testified that these particular entries suggested "endless possibilities" regarding who made these entries and when they were made.

After considering the evidence, the circuit court issued a letter opinion explaining its ruling in favor of Adams. Addressing Maine's argument that the print was a "public record" under Maine statutory law, the circuit court held that the 1973 statutory definition of that term was inapplicable because it

6

did not have retroactive effect.[2]  However, the circuit court also addressed the merits of Maine's statutory argument, ruling that even if that statutory definition did have retroactive effect, Maine failed to establish that the town "maintained" the print as required by that statutory definition.

In addition, the circuit court determined that the print did not meet the common law definition of a "public record" because a public officer did not create the print.  The circuit court also found that Maine failed to prove that the town "kept" the print as a town record.

Finally, the circuit court concluded that Maine failed to prove that even if the town clerk had once possessed the print, the print later was converted.  The circuit court found that Maine presented no evidence that the print was wrongfully removed or converted.  The circuit court stated that any conclusion regarding when and how the print left the town's possession would be conjecture.

Based on these findings, the circuit court held that because Maine failed to establish ownership of the print, Adams had superior title to the print as a bona fide purchaser and the party in possession of the print.  The circuit court entered a final judgment order incorporating its letter opinion.  Maine appeals.

---

[2] See ME. REV. STAT. ANN. tit. 30, § 2212(3)(1973).

7

Maine argues that the circuit court erred in ruling that Adams established superior title to the print. Maine begins its analysis by arguing that the circuit court erred in failing to apply a preponderance of the evidence standard and in assigning Maine the burden of proving "conclusively" that the print was kept or maintained by the town. Maine contends that, to the extent that it had a burden of proof, Maine proved that the town is the true owner of the print because the print meets the definition of a "public record" under Maine statutory law.

In the alternative, Maine asserts that the print qualifies as a public record under the common law. Maine contends that the evidence demonstrated that the town kept the print for a sufficient period of time, after its delivery to the town clerk in 1776, so as to render the print a public record. Maine contends that the evidence showed that town records were kept by town clerks at their homes in the 18th, 19th, and 20th centuries, and that this evidence explains the location of the print in the home of a daughter of a former town clerk.

Maine additionally asserts that the circuit court erred in ruling that the common law requires that a public record be created by a public official. Maine contends that the print qualified as a public record under the common law because although Russell was a private printer, he created the broadsides at the direction of the Executive Council.

8

In response, Adams argues that the circuit court correctly decided that Adams established superior title to the print. With respect to Maine's common law argument, Adams contends that Maine failed to prove that the town owned the print under the common law definition of "public record" because the print was not a written memorial made by a public officer. Adams maintains that under the common law definition, the copy of the Declaration that the town clerk transcribed into the town book is the only public record established by the evidence.

Adams also argues that Maine was unable to show that the town "kept" the print, within the meaning of the common law. Adams contends that the evidence regarding Holbrook's connection to the print is speculative, because the evidence failed to show that the print had been transferred from town clerks to their successors, or that Holbrook ever had possession of the print.

Addressing Maine's statutory argument, Adams asserts that Maine's position is defaulted on procedural grounds. Adams argues that Maine failed to assign error to the circuit court's holding that Maine statutory law defining a "public record" does not have retroactive effect. According to Adams, Maine's failure to assign error to that holding bars this Court from considering whether the circuit court correctly decided that matter.

9

In resolving these issues, we first observe that an action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title. Neff v. Ryman, 100 Va. 521, 524, 42 S.E. 314, 315 (1902); John L. Costello, Virginia Remedies § 20.07 at 20-38, 20-39 (3d ed. 2005). Thus, in a quiet title action, a plaintiff asks the court to declare that he has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it. Black's Law Dictionary 32 (8th ed. 2004); see City of Staunton v. The Augusta Corp., 169 Va. 424, 429-32, 193 S.E. 695, 696-97 (1937) (city failed to carry burden to show it owned certain real property); Costello, Virginia Remedies § 20.07 at 20-38, 20-39.

At trial, each party asserted that it had superior title to the print. Accordingly, each party bore the burden of proving those facts necessary for the court to rule in its favor. See Sachs v. Horan, 252 Va. 247, 250, 475 S.E.2d 276, 278 (1996); United Dentists, Inc. v. Commonwealth, 162 Va. 347, 355, 173 S.E. 508, 511 (1934); 9 John H. Wigmore, Evidence in Trials at Common Law § 2485, 283-86 (Chadbourn rev. 1981).

The common law provides that possession of property constitutes prima facie evidence of ownership until a better title is proven. Smith v. Bailey, 141 Va. 757, 776, 127 S.E.

10

89, 95 (1925); see Tate v. Tate, 85 Va. 205, 214, 7 S.E. 352, 356 (1888); Willcox v. Stroup, 467 F.3d 409, 412-13 (4th Cir. 2006). We have explained that possession of personal property is presumptive proof of ownership because individuals generally own the personal property that they possess. Saunders v. Greever, 85 Va. 252, 289, 7 S.E. 391, 410 (1888); see Willcox, 467 F.3d at 412.

This common law presumption of ownership based on possession requires that the party not in possession of the disputed personal property produce evidence of superior title. If the party not in possession is able to produce such evidence of superior title, the presumption of ownership in the possessor is defeated. Willcox, 467 F.3d at 413; see Brunswick Land Corp. v. Perkinson, 146 Va. 695, 708, 132 S.E. 853, 857 (1926). However, if the party not in possession fails to establish superior title to the property, the presumption of ownership based on possession prevails and relieves a court from having to preside over "a historical goose chase." Willcox, 467 F.3d at 413.

Maine seeks to establish superior title to the print on the basis that the print is a "public record" kept and maintained by the town. In making this assertion, Maine relies both on the common law definition of "public record" and on Maine's own statutory definition of that term.

We first examine the common law component of Maine's claim. The parties agree that both Maine and Virginia recognize the same definition of a "public record" under the common law. This definition, adopted in many jurisdictions, provides that a "public record" is

> 'a written memorial made by a public officer authorized by law to perform that function, and intended to serve as evidence of something written, said or done.' It must be 'a written memorial,' must be made by 'a public officer,' and that officer must be 'authorized by law' (not required) to make it. [The public official] must have authority to make it; but that authority need not be derived from express statutory enactment. Whenever a written record of the transactions of a public officer in his office, is a convenient and appropriate mode of discharging the duties of his office, it is not only his right but his duty to keep that memorial, whether expressly required to do so or not.

Coleman v. Commonwealth, 66 Va. (25 Gratt.) 865, 881 (1874)(emphasis and citation omitted); see White v. United States, 164 U.S. 100, 103 (1896); Treat v. McDonough, 367 P.2d 587, 589 (Colo. 1961); Branch v. State, 80 So. 482, 485 (Fla. 1918); People v. The Dime Savings Bank, 183 N.E. 604, 607 (Ill. 1932); Robison v. Fishback, 93 N.E. 666, 668-69 (Ind. 1911); State v. Hanlin, 110 N.W. 162, 164 (Iowa 1907); State v. Chase, 330 A.2d 909, 911-12 (Me. 1975); State v. Donovan, 86 N.W. 709, 711 (N.D. 1901); State v. Kelly, 143 S.E.2d 136, 139 (W.Va. 1965).

In the present case, the evidence showed that Russell was not a public officer, but was a private printer who printed

12

between 200 and 300 broadsides at the direction of the Executive Council. The fact that the Executive Council authorized Russell to print the broadsides did not transform his employment status from that of a private printer to one of a public officer. Russell was not executing the duties of public office at the time he printed the broadsides.

The duty that the common law assigns public officers to make a written record of governmental action reflects the importance of public records in providing accurate and transparent accounts of governmental acts. The serious nature of this responsibility is such that the duty may be required under the sanction of official oath. See Coleman, 66 Va. at 882. Public officers are charged with the duty to keep written records of governmental action affecting the citizens of their jurisdictions, and the record entries made by those public officers serve as the "public record" on which the citizens can rely.

In the present case, the duty of the town's clerk to create a public record of the Declaration emanated from the Executive Council's order directing that the clerks of the various towns record the text of the Declaration in their town books "there to remain as a perpetual Memorial thereof." This order of the Executive Council reflected the importance of the clerks' acts of transcription and the fact that the written entries they

13

created were to be the perpetual record of the Declaration in the various town books.

In addition, one of the handwritten notations on the reverse side of the print provided evidence that the print was not intended to be a public record of the town. According to that notation, after the print was sent to Reverend Moore in Pownalborough, the print was delivered to Reverend Murray in Booth Bay before it was received by the town clerk in Pownalborough.

The evidence before us shows that Edmund Bridge, the town clerk of Pownalborough in 1776, created a public record of the Declaration for Pownalborough when he transcribed the words of the Declaration into the official town book. The fact that the print was critical to Bridge's transcription of the text of the Declaration did not render the print a public record. Instead, the only public record of the Declaration under the common law was the actual transcription that Bridge entered in the town book in accordance with the Executive Council's order.

We do not reach the common law issue whether the print was "kept" by the clerks of the town after the Declaration's text was transcribed into the town book. The fact that the print was not made by an authorized public officer and was not intended to be the official memorial of the Declaration precluded the print from qualifying as a "public record" under the common law,

irrespective whether the print later was "kept" by the town's clerks.  Coleman, 66 Va. at 881; see White, 164 U.S. at 103; Treat, 367 P.2d at 589; Branch, 80 So. at 485; Dime Savings Bank, 183 N.E. at 607; Robison, 93 N.E. at 668-69; Hanlin, 110 N.W. at 164; Chase, 330 A.2d at 911-12; Donovan, 86 N.W. at 711; Kelly, 143 S.E.2d at 139.  Thus, we hold that the print was not a public record of the town under the common law.[3]  See Coleman, 66 Va. at 881; White, 164 U.S. at 103; Treat, 367 P.2d at 589; Branch, 80 So. at 485; Dime Savings Bank, 183 N.E. at 607; Robison, 93 N.E. at 668-69; Hanlin, 110 N.W. at 164; Chase, 330 A.2d at 911-12; Donovan, 86 N.W. at 711; Kelly, 143 S.E.2d at 139.

Maine argues, nevertheless, that the print is a "public record" as defined under Maine statutory law.  The circuit court rejected that argument holding, among other things, that the

---

[3] Based on this holding, we do not address Maine's other arguments concerning whether the documents were kept by the town clerk, including the circuit court's allocation of the burden of proof regarding how and when the print left the town's possession, the circuit court's statement that Maine had the burden to prove "conclusively" that the print was kept by the town, the circuit court's consideration whether other towns currently maintain broadside prints, the circuit court's ruling that no law required the town to keep the print after it was transcribed into the town book, and the circuit court's consideration whether a library was built in Wiscasset in 1805 to store town records.  As stated above, Maine's failure to prove that the print was a written memorial made by an authorized public officer precludes the print from qualifying as a "public record" under common law, irrespective whether Maine produced any evidence that the town clerks kept the print.

15

print "pre-dates Maine's 1973 definition of 'public records,' and Maine did not produce evidence that Maine's legislators intended for this definition to apply retroactively to all of the documents that ever entered the state of Maine. Therefore, the 1973 definition of 'public record' does not apply to this case."

We are unable to consider the merits of Maine's statutory argument. A party who asks this Court to consider whether a circuit court's holding was erroneous is required to assign error to the challenged holding so that it may be identified properly for our consideration. Rule 5:17(c); Friedline v. Commonwealth, 265 Va. 273, 278-79, 576 S.E.2d 491, 494 (2003); Kirby v. Commonwealth, 264 Va. 440, 444-45, 570 S.E.2d 832, 834 (2002); Chesapeake Hosp. Auth. v. Commonwealth, 262 Va. 551, 556 n.2, 554 S.E.2d 55, 57 n.2 (2001). Thus, when a party fails to assign error to a particular holding by the circuit court, that holding becomes the law of the case and is binding on appeal. See Little v. Cooke, 274 Va. 697, 722, 652 S.E.2d 129, 144 (2007); Chesapeake Hosp. Auth., 195 Va. at 565, 554 S.E.2d at 62; Trustees v. Taylor & Parrish, Inc., 249 Va. 144, 154, 452 S.E.2d 847, 852 (1995).

Maine did not assign error to the circuit court's holding that Maine's 1973 statutory definition of public "record" was not intended to have retroactive application to documents such

16

as the print.[4]  Therefore, we hold that the circuit court's determination that Maine's statutory definition of public "record" was not intended to have retroactive effect has become the law of this case.  See Little, 274 Va. at 722, 652 S.E.2d at 144; Chesapeake Hosp. Auth., 195 Va. at 565, 554 S.E.2d at 62; Trustees, 249 Va. at 154, 452 S.E.2d at 852.

Our decision that Maine's statutory definition of "public record" is procedurally barred from review also removes from our consideration Maine's various arguments based on that statutory definition.  Thus, we do not consider those issues, including whether the circuit court erroneously employed a "conclusive" standard of proof regarding whether the print was "maintained" by the town within the meaning of the statutory definition.

Finally, we find no merit in Maine's argument that regardless whether the print met the definition of a "public record" under the common law or statutory law, the circuit court erred in holding that Wiscasset did not own the print.  Maine bases this argument on its contention that because the print was delivered to the town clerk in 1776, the print immediately became the property of the town.  Maine asserts that Solomon

---

[4] See ME. REV. STAT. ANN. tit. 30, § 2212(3)(1973).  We also observe that Maine agreed during oral argument of this case that the current statutory definition of the term public "record," found in Title 5, Section 92-A(5) of the Maine Revised Statutes Annotated, is substantially the same as the 1973 version addressed by the circuit court.

17

Holbrook's family wrongfully converted the print, and that Maine as the true owner of the print may recover it from Adams irrespective whether he was a bona fide purchaser for value.

Even if we assume, without deciding, that the town owned the print by virtue of having had the print in its possession more than 200 years ago, the record does not establish that the print was converted. "Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." Economopoulos v. Kolaitis, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000); see Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 75-76, 92 S.E.2d 359, 365 (1956); accord Withers v. Hackett, 714 A.2d 798, 800 (Me. 1998); Leighton v. Fleet Bank of Maine, 634 A.2d 453, 457 (Me. 1993).

Maine produced no evidence supporting its theory of conversion but merely asks us to speculate that because the print was found in Holbrook's daughter's attic, Holbrook or a member of his family converted the print. We will not engage in such speculation and conclude as a matter of law that Maine did not prove by a preponderance of the evidence that the print was converted by Holbrook or his family.

Accordingly, we conclude that the circuit court did not err in holding that Adams established superior title to the print. In reaching this conclusion, we need not consider whether Adams

18

was a bona fide purchaser of the print because after Adams established prima facie title to the print, Maine failed to prove under any theory that Maine owned the print or had superior title. See Smith, 141 Va. at 776, 127 S.E. at 95; Tate, 85 Va. at 214, 7 S.E. at 356; Willcox, 467 F.3d at 412-13.

For these reasons, we will affirm the circuit court's judgment and enter final judgment declaring that Richard L. Adams, Jr. has good title to the print.

Affirmed.