COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Callins and Senior Judge Clements
Argued at Richmond, Virginia

PUBLISHED

LEONARD W. COWHERD, ET AL.

                                                  OPINION BY

v.       Record No. 0193-23-2         JUDGE DOMINIQUE A. CALLINS
                                                 SEPTEMBER 17, 2024

CITY OF RICHMOND

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
D. Eugene Cheek, Sr., Judge[1]

H. Edward Phillips (S. Braxton Puryear, on briefs), for appellants.

Robert M. Rolfe (Edward J. Fuhr; Sarah C. Ingles; Hunton Andrews
Kurth LLP, on brief), for appellee.

This case involving the relocation of a statue of the Confederate General Ambrose Powell

Hill ("A.P. Hill") illustrates the truism that "[i]nterments once made should not be disturbed except

for good cause." *Goldman v. Mollen*, 168 Va. 345, 355 (1937). At no time have the appellants, the

collateral descendants of A.P. Hill (collectively, "Cowherd"), objected to the plan of the City of

Richmond to relocate the remains of A.P. Hill and the statue that stood above them at the

intersection of Laburnum Avenue and Hermitage Road. The dispute here concerns which party—

Cowherd or the City—has superior authority to decide the final disposition of the statue. For the

following reasons, we affirm the judgment of the circuit court.

---

[1] Since this proceeding, Judge Cheek has retired.

BACKGROUND[2]

When A.P. Hill died in April 1865, his remains were initially interred in Chesterfield

County, Virginia, in a family cemetery. Two years later, the remains were moved to Hollywood

Cemetery in Richmond, where they rested until 1891. In 1891, A.P. Hill's remains were moved

from Hollywood Cemetery and reinterred at the intersection of Laburnum Avenue and

Hermitage Road on land that was then owned by Lewis Ginter and located within Henrico

County.

In 1892, shortly after the remains were reinterred, a statue of A.P. Hill was constructed

and unveiled on the site above his remains.[3] Together—the remains, the statue, and the parcel of

land on which both were located at the intersection of Laburnum Avenue and Hermitage Road—

constitute the monument site.[4] In 1914, the City of Richmond annexed a portion of Henrico

County that included the A.P. Hill monument site. Since then, the City has exclusively owned

and maintained the monument site. John Michael Hill, a collateral descendent, testified before

the circuit court, acknowledging that he had not paid anything toward the monument or its

---

[2] The circuit court, in its letter opinion, described the facts of this case as "virtually uncontested," and we agree: although neither party formally adopts the other's recitation of facts, the parties' recitations are essentially identical, and neither challenges the slight differences asserted by the other.

[3] According to a description reported in a July 2, 1901, Richmond Dispatch article, and included as "Exhibit E" of the City's Pretrial Brief, "[t]he oaken coffin was lowered into the monument's 'receptacle' (pedestal) and three stones were laid on top. The monument stone work had already reached a height of 6 feet prior to the lowering of the oaken box." According to this description, the remains were located inside the base of the statue's platform, or "pedestal."

[4] The parties disagree about the appropriate descriptor for the former location of the remains and the statue erected atop it. In its petition, the City of Richmond refers to "the A.P. Hill monument" and "the A.P. Hill monument site." Cowherd, conversely, refers to the subject statue as a "grave marker." For consistency, we employ the same terms used by the circuit court to reference the location at which the remains of A.P. Hill were interred (the "monument site") and the statue erected above the remains (the "monument").

maintenance. Additional evidence introduced by the City further confirmed that no one other than the City had contributed to the maintenance of the A.P. Hill monument or the monument site.

In August of 2020, the Richmond City Council adopted Ordinance No. 2020-154, which authorized the City to remove Confederate statues from City-owned property. The ordinance specifically included the "General A.P. Hill monument." Thereafter, the City drafted a "Relocation Plan" to remove and relocate the A.P. Hill monument and remains.

Approximately two years later, pursuant to Code § 15.2-1812, the City petitioned the Circuit Court of the City of Richmond for permission to disinter A.P. Hill's remains from the monument site. Citing traffic safety concerns and its desire to remove monuments to Confederate soldiers, the City sought to relocate the A.P. Hill remains to Fairview Cemetery in Culpeper, Virginia. Also pursuant to Code § 15.2-1812, the City sought to gift the A.P. Hill monument to the Black History Museum and Cultural Center, "an organization with expertise on items related to history and culture," and with whom the City had a contract for the transfer of several monuments. The City thereafter properly notified the collateral descendants of A.P. Hill of its petition pursuant to Code § 15.2-1812(A).

In their answer and counterclaim to the petition, Cowherd asserted that, given "A.P. Hill was born in Culpeper," they did not object to the City's plan to relocate A.P. Hill's remains and reintern them at Fairview Cemetery. Cowherd argued that the monument, however, stood as a "grave marker" over A.P. Hill's remains and, thus, the monument site was a publicly owned cemetery under Code § 54.1-2310. Accordingly, Cowherd sought the circuit court's declaration of the monument as the property of the collateral descendants of A.P. Hill. Further, Cowherd sought the court's permission to relocate the monument at the descendants' discretion. At a

- 3 -

hearing before the circuit court, Cowherd proposed that the monument be removed to Cedar Mountain Battlefield.

The circuit court found that the City alone possessed the authority to determine the final placement of the A.P. Hill monument. Applying the definition of "cemetery" codified in Richmond City Code § 7-1, the court held the A.P. Hill monument site was not a publicly owned cemetery because, as it contained the remains of only one person, the site was not "devoted exclusively to the interment of deceased persons." Further, the circuit court found that, even if Code § 15.2-1812 did not authorize the City to dispose of the monument, Cowherd failed to establish an ownership right in the monument. Cowherd introduced no evidence showing that either the monument site or the monument itself belonged to A.P. Hill at his death. Therefore, the circuit court reasoned, "the A.P. Hill statue cannot belong to A.P. Hill's descendants because it never belonged to A.P. Hill." Accordingly, the circuit court concluded that the City owned the monument and had the sole authority, pursuant to statute, to determine its disposition. Cowherd appeals.

## ANALYSIS

On appeal, Cowherd raises eleven assignments of error to the judgment of the circuit court. These multiple assignments of error reduce to a single contention: that because the A.P. Hill monument site is a "publicly owned cemetery" as contemplated by Code § 15.2-1812(A), the monument is a grave marker, and the collateral descendants of A.P. Hill—not the City—possess the sole authority to direct its relocation.[5]

---

[5] Despite designating the same, Cowherd fails to provide argument or authority in support of their second, sixth, and tenth assignments of error. Thus, we deem these assignments of error waived. *See* Rule 5A:20(e). "Unsupported assertions of error 'do not merit appellate consideration.'" *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)).

- 4 -

## I. Standard of Review

To begin, we necessarily apply well-established principles of statutory interpretation. "[T]he [trial] court's interpretation and application of [Code § 15.2-1812] presents a question of law that we will consider under a de novo standard of review." *See Commonwealth v. Garrett*, 276 Va. 590, 599 (2008); *see also Walker v. Va. Dep't of Corrections*, 79 Va. App. 415, 420 (2024). "When construing a statute, our primary objective is to ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 161 (2021) (quoting *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018)).

Also, "it is a 'settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.'" *Baker v. Commonwealth*, 278 Va. 656, 661 (2009) (quoting *Farrakhan v. Commonwealth*, 273 Va. 177, 181 (2007)). For this reason, we "consider the entire statute 'to place its terms in context,'" as "it is 'our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Va. Elec. & Power Co.*, 300 Va. at 161 (quoting *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 208 (2015)). If the language of a statute is unambiguous, this Court is bound by the plain meaning of the language. *Va. Elec. & Power Co.*, 295 Va. at 262-63. We do not concern ourselves with "what the legislature *intended* to enact, [but rather,] what is the meaning of that which it *did* enact. We must determine the legislative intent by what the statute says and not by what we think it should have said." *Carter v. Nelms*, 204 Va. 338, 346 (1963) (emphases added).

II. Application of Code § 15.2-1812[6]

Code § 15.2-1812 governs the rights of a locality to remove or relocate war monuments or memorials. In relevant part, it states:

> A. A locality may, within the geographical limits of the locality, authorize and permit the erection of monuments or memorials for the veterans of any war or conflict, or any engagement of such war or conflict . . . . Notwithstanding any other provision of law, general or special, a locality may remove, relocate, contextualize, or cover any such monument or memorial on the locality's public property, *not including a monument or memorial located in a publicly owned cemetery*, regardless of when the monument or memorial was erected, after complying with the provisions of subsection B.
>
> B. . . . *The local governing body shall have sole authority to determine the final disposition of the monument or memorial*.

Code § 15.2-1812(A)-(B) (emphases added). The language of the statute makes clear that a local governing body such as the City of Richmond is authorized to, among other things, remove or relocate war monuments or memorials existing on public property, and Cowherd acknowledges this broad authority. They contend, however, that the A.P. Hill monument site "was, in fact and in law, a publicly owned *cemetery*." Cowherd further contends that, because the monument site is a cemetery, the City is "utterly without authority" to determine the monument's final disposition. We disagree.

Central to the resolution of this case is the fact that Cowherd did not object to the relocation of the monument, or A.P. Hill's remains, from the intersection. Indeed, Cowherd "agree[d] that the Remains should be removed to Fairview Cemetery in Culpeper, Virginia" and

___

[6] On appeal, Cowherd does not contest the applicability of Code § 15.2-1812 on the basis that the monument site is not a "war memorial or monument," notwithstanding their first assignment of error asserting, "That the Trial Court Erred in Granting Appellee's Petition because the City of Richmond, properly styled its Petition as, 'IN RE: REMAINS AND GRAVE SITE OF A.P. HILL,' and any references to Monuments to War and Memorials to Veterans are Clearly Wrong." Accordingly, we assume without deciding that the A.P. Hill monument site is a "war memorial or monument" for purposes of applying Code § 15.2-1812.

also "concurred with the removal of the A.P. Hill Grave Marker from the intersection of Laburnum Avenue and Hermitage Road[.]" On appeal, Cowherd solely contends that the City does not have the authority to determine the monument's "final disposition."

Cowherd's agreement to the City removing the remains and the monument from the intersection renders irrelevant the question of whether the monument site was a "publicly owned cemetery" and therefore subject to the exception in Code § 15.2-1812(A). By agreeing to remove A.P. Hill's remains and to relocate the statue, there is no remedy under Code § 15.2-1812 upon which Cowherd can now rely.[7] Code § 15.2-1812(A) states that "a locality may remove, relocate, contextualize, or cover any such monument or memorial on the locality's public property, not including a monument or memorial located in a publicly owned cemetery." It follows that if a monument *is* in a public cemetery, then the locality may *not* "remove, relocate, contextualize, or cover any such monument or memorial." Code § 15.2-1812(A). Cowherd has not, however, argued—either to the circuit court or to this Court—that the City may not remove the monument at all. Instead, Cowherd agreed with the City that the monument should be removed from the intersection, and Cowherd has asked that the monument be moved to the collateral descendants' desired location. Therefore, given that Code § 15.2-1812(A) does not provide Cowherd with the ability to attain the specific relief they seek—that is, control of the disposition of the monument—Cowherd must establish their property rights in the monument so as to supplant the authority of the City.

Cowherd acknowledges that since the establishment of the monument site, no A.P. Hill descendant has "played a role in its care or maintenance," nor has a descendant previously

---

[7] For this reason, we do not address whether, prior to the removal of A.P. Hill's remains and relocation of the monument, the monument site was a "publicly owned cemetery" for purposes of Code § 15.2-1812.

- 7 -

asserted a claim to the monument as personal property.[8] One collateral descendant testified directly that he had not "paid anything toward the monument." The collateral descendants admit that they did not contribute financially to either the installment, construction, or maintenance of the A.P. Hill monument site, including the monument itself. Nonetheless, Cowherd argues that, as collateral descendants, they are "vested with right, title, and interest in the place in which [A.P. Hill's] remains reposed undisturbed for more than 130 years." This argument is meritless.

"The common law provides that possession of property constitutes prima facie evidence of ownership until a better title is proven." *Maine v. Adams*, 277 Va. 230, 238 (2009). "This common law presumption of ownership based on possession requires that the party not in possession of the disputed personal property produce evidence of superior title." *Id.* at 239. "However, if the party not in possession fails to establish superior title to the property, the presumption of ownership based on possession prevails and relieves a court from having to preside over 'a historical goose chase.'" *Id.* (quoting *Willcox v. Stroup*, 467 F.3d 409, 413 (4th Cir. 2006)). Indeed, this presumption serves to "resolve otherwise impenetrable difficulties," as "[w]here neither party can establish title by a preponderance of the evidence, the presumption cuts the Gordian knot, determining ownership in favor of the possessor." *Willcox*, 467 F.3d at 413.

By maintaining the monument site for over 100 years, the City has demonstrated a presumption of ownership in the monument. Thus, Cowherd bears the burden of establishing their "superior title" to the monument. Cowherd presented no evidence that anyone in the A.P. Hill family purchased the monument or contributed to its establishment or installation. Since the establishment of the monument in 1892, no one in the A.P. Hill family has contributed,

---

[8] In their eleventh assignment of error, Cowherd asserts a personal property interest in the monument as a "grave marker." Yet beyond this bare assertion, Cowherd seems to abandon this assignment, having provided no supportive authority or argument. Thus, we deem it waived. *See supra* note 5.

financially or otherwise, to the maintenance of the monument. The collateral descendants of A.P. Hill have not established a claim of right to the monument. Because Cowherd provided no evidence to rebut this presumption of ownership, Cowherd failed to carry their burden establishing that they have "vested right, title, and interest" in the monument to supplant the authority of the City.[9]

## CONCLUSION

Because we hold that Cowherd failed to establish ownership of or vested interest in the A.P. Hill monument, we affirm the judgment of the circuit court.[10]

*Affirmed.*

---

[9] In their fifth assignment of error, Cowherd contends that the circuit court erred in finding that Cowherd did not identify a statutory provision entitling them to attorney fees. Because Cowherd did not address this in their opening brief, we deem this assignment waived. *See* Rule 5A:20(e). For the same reason, we do not consider Cowherd's fourth assignment of error. *See* Op. Br. at 2 ("That the Trial Court Erred in Granting Appellee's Petition because the City has Abandoned the A.P. Hill Grave Site where it Avers that the Grave Site is a Traffic Hazard and therefore the Procedures for the Condemnation and the Abandonment and the Relocation of the Remains and the Grave Marker is Dictated by Section 57.37 [sic] of the Code of Virginia, 1950, as amended."). *See supra* note 5.

[10] We uphold the judgment of the circuit court by applying "the right-result-*different*- reason doctrine." *See Rickman v. Commonwealth*, 294 Va. 531, 542 (2017). In so doing, we "express no view on the correctness of the lower court's rationale" in finding that the A.P. Hill monument site was not a publicly owned cemetery. *Id.*